# UNITED STATES DISTRICT COURT

for the
Southern District of Illinois

SCANNED at MENARD and E-mailed
2-10-22 by JB 54 pages
Date        initials      No.

West, Kentes

_____

_____

_____

*Plaintiff(s)/Petitioner(s)*

v.

Anthony D. Wills, ADW/CAO; Wexford
Health Services, Inc.; Reba Engelage, RN;
A. Dearmond, P.A.; Medical Director Jane, John
Doe, Menard Staff Member Jane/John Doe, etc.

*Defendant(s)/Respondent(s)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: **22-242-SPM**

*(Clerk's Office will provide)*

☒ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983 (State Prisoner)
☐ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331 (Federal Prisoner)
☐ CIVIL COMPLAINT
pursuant to the Federal Tort Claims Act, 28 U.S.C.
§§1346, 2671-2680, or other law

And
PRELIMINARY INJUNCTION & A
TEMPORARY RESTRAINING ORDER,
(TRO)

## I.    JURISDICTION

### Plaintiff:

A.    Plaintiff's mailing address, register number, and present place of
confinement. MENARD Correctional Center
711 Kaskaskia Street
P.O. Box 1000
Menard, Illinois 62259

### Defendant #1:

B.    Defendant **Anthony D. Wills** _____ is employed as
(a)        (Name of First Defendant)

**Warden, Chief Administrative Officer** _____
(b)        (Position/Title)

with **Menard Correctional Center, 711 Kaskaskia Street** _____
(c)        (Employer's Name and Address)

**P.O. Box 1000, Menard, Illinois 62259** _____

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?    ☒ Yes    ☐ No

If your answer is YES, briefly explain: He was #1 Warden, Chief
Administrative Officer, who was informed of my serious medical need and
failed in helping me get medical attention.

Rev. 10/3/19

①

**Defendant #2:**

C.    Defendant <u>Assistant Warden Reickart</u>                    is employed as

(Name of Second Defendant)

<u>Assistant Warden</u>

(Position/Title)

with <u>Menard Correctional Center 711 Kaskaskia Street</u>

(Employer's Name and Address)

<u>P.O. Box 1000, Menard, Illinois 62259</u>

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?    ☒ Yes    ☐ No

If you answer is YES, briefly explain: Assistant Warden Reickart, was escorting Attorneys through Crisis Watch while Plaintiff was on Crisis Watch for Self harming to get Medical Attention, still being denied Plaintiff informed him of his Medical needs and he failed in aiding Plaintiff get Medical attention after he investigated why Plaintiff alledgedly was in Segregation for.

**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

Defendant #3 Wexford Health Care Services

Health Care Provider for Illinois Department of Corrections

Menard Correctional Center 711 Kaskaskia Street

P.O. Box 1000, Menard, Illinois 62259

At the time the claim (s) alleged in this complaint arose, Defendant #3 was employed by the State, local, or federal government? Yes.

Wexford Health Care Services, Inc.; was the Health Care Provider for Menard Correctional Center and fail to provide Menard Correctional Center with a on Sight Doctor or Medical Director So that Individuals In Custody Serious Health Care need could be adequately met.

Rev. 10/3/19

②

E. Defendant #4 Reba Engelage, RN;

RN, Nurse of North 2 Unit

Menard Correctional Center 711 Kaskaskia Street

P.O. Box 1000 Menard Illinois 62259

At the time the claim(s) alleged this complaint arose, was Defendant #4 employed by the state, local, or federal government? Yes

She was the five day a week RN nurse in North 2 unit where Plaintiff was housed. She was informed of Plaintiff's serious medical need and because staff is the cause of it she failed to process his serious medical need to the current Physical Assistant so that Plaintiff could be seen prescribed pain medication Xray MRI and/or Corrective Surgery. This was done before by this same RN in the past when staff here at menard broke Plaintiff's thumb.

F. Defendant #5 A. Dearmond, P.A.

Physical Assistant of North 2 unit

Menard Correctional Center 711 Kaskaskia Street

P.O. Box 1000 Menard, Illinois 62259

At the time the claim(s) alleged this complaint arose, was Defendant #5 employed by the state, local, or federal government? Yes

She was the Physical Assistant who was informed of Plaintiff's serious medical need and although she state she could do everything a Doctor could do. Informed Plaintiff that bones could heal themselves and because this was a bad time that Plaintiff more than likely would (not get the proper care needed) not get corrective surgery but would get Therapy which would also be altered because he was in Segregation. But no corrective surgery due to how long injury occurred, Menard not having a Doctor or Medical Director. But she did make it clear Wexford had a Doctor but not assigned one to Menard yet.

③

G. Defendant #6  DR. Melvin Hinton

Mental Health Director/chief of Mental Health Services for I.D.O.C.

Menard Correctional Center  711 Kaskaskia Street, P.O. Box 1000

Menard, Illinois 62259

At the time the claim(s) alleged this complaint arose, was Defendant #6 employed by the State, local, or federal government? yes

He was Mental Health Director/chief of Mental Health Services for Illinois Department of Corrections, including Menard Correctional Center while his office is located at 16830 S. Broadway Street, Crest hill, Illinois 60403. He was in Control of the Mental Health workers under his authority who always State they will report my Serious Medical need to "the top," who workers delayed getting me aid in getting treated for Months until Plaintiff Spoke with a Dr. Carridge of Mental health on December 4, 2021.

H. Defendant #7 Marberry, M.H.P.

Mental Health Professional, (May have rank unknown to Plaintiff at this time.)

Menard Correctional Center, 711 Kaskaskia Street, P.O. Box 1000

Menard Illinois 62259

At the time the Claim(s) alleged this Complaint arose, was Defendant #7 employed by the State, local, or federal government? yes.

She was a Mental Health Professional during a routine check up with my neighbor in North 2 unit cell #223, due to him recently getting off Suicide watch. Plaintiff had minutes before her arrival Self harmed and was bleeding due to him being in So much pain and trying to get Some medical attention. He finally got her attention through informing the Prison Guard who was escorting her. When She heard and Saw what plaintiff Showed her. While he was asking her Could he get medical attention and be placed on crisis watch. She became angry and Stated "I don't got time for that, talk to Someone else I'm not doing anymore paperwork today then I already have to do. Then walked away.

(4)

I. Defendant #8  R. Draper, M.H.P.

Mental Health Professional

Menard Correctional Center, 711 Kaskaskia Street, P.O. Box 1000

Menard, Illinois 62259

At the time the Claim(s) alleged this Complaint arose, was Defendant #8 employed by the State, local, or federal government? Yes.

She was Mental Health Professional who was informed on several occasions of Plaintiff's serious medical need while he was on Crisis Watch and did nothing to get Plaintiff any medical attention, even going outside of the interview office and discussing with Sergeant Dallas, (security staff) everything that Plaintiff had just discussed with her. She failed to get me medical attention for my self harm cut injury or my shoulder injury.

J. Defendant #9  Bordo M.H.P.

Mental Health Professional

Menard Correctional Center, 711 Kaskaskia Street, P.O. Box 1000

Menard, Illinois 62259

At the time the Claim(s) alleged this Complaint arose, was Defendant #9 employed by the State, local, or federal government? Yes.

She was Mental Health Professional who was informed on several occasions of Plaintiff serious medical need while he was on crisis watch, she even went so far to state she could see the swelling under Plaintiff's smock. When Plaintiff asked which shoulder, thinking she was playing a mental mind game, she stated the left one which was the correct side of plaintiff's injury. She also stated she would inform the people at the top of her profession by documenting my most paramount concerns. But that it was only so much she could do because she had to stay in her lane which is Mental Health. She failed to get me any medical attention for either my self harm cut or shoulder injury.

K. Defendant #10  Bentner M.H.P.

Mental Health Professional

Menard Correctional Center 711 Kaskaskia Street, P.O. Box 1000

Menard, Illinois 62259

At the time the claim(s) alleged this Complaint arose, was Defendant #10 employed by the state, local, or federal government? yes

She was mental Health Professional who was seen by Plaintiff on several occasions and informed of Plaintiff's serious medical need Although she didnot aid in getting plaintiffs seen by medical for his injury, the last time she ever saw plaintiff when she seen how painful it was for Plaintiff being handcuff behind his back with one set of handcuffs, she did notify a nurse who brought Plaintiff 2 small red pain pills and a small cup of water. Although the pain pills did nothing for his pain. This was the only M.H.P. who had at least notified a nurse after multiple interviews.

L. Defendant #11  Sergeant Chitty

North 2 Cell House Sergeant

Menard Correctional Center, 711 Kaskaskia Street, P.O. Box 1000

Menard, Illinois 62259

At the time the claim(s) alleged this Complaint arose was Defendant #11 employed by the state, local, or federal government? yes.

He was the North 2 Cell house Sergeant, who Plaintiff had informed of his self harm because he was in need of medical treatment for both his injuryed Shoulder and his bleeding arm due to self harming. Sergeant Chitty's reply was "Come on West you got to do better than that you remember Anthony Gay and Anthony white? If you want to see a Doctor you got to cut like them guys, I'll be back later to see if you got something better than that to show me. He didnot aid me in getting any medical ⑥ attention.

M. Defendant #12    Rachel, Med.-Tech.

Medical Technician that pass out Medication

Menard Correctional Center, 711 Kaskaskia Street, P.O. Box 1000

Menard, Illinois 62259

At the time the claim(s) alleged this Complaint arose, was Defendant #12 employed by the State, local, or federal government? yes

She was medical Technician/possible Rn nurse, that passed out medication the night I self harmed and asked her to treat my bleeding wound. When I showed her she stated "How did that happen?" Plaintiff explained he cut up because he need medical treatment. She stated "that don't make sense." At this time Sergeant chitty stated "he'll live he just want some attention, so don't mind him." She stated get some tissue and apply a little pressure it'll stop bleeding." At this the Surrounding Prison Guards started lauging, and they all walk away.

N. Defendant #13    Bent, Prison Guard

Prison Guard that was assigned to North 2-2 gallery.

Menard Correctional Center, 711 Kaskaskia Street, P.O. Box 1000

Menard, Illinois 62259

At the time the claim(s) alleged this Complaint arose, was Defendant #13 employed by the State, local, or federal government? yes

He was the prison Guard who was assigned to 2 gallery, North 2 unit. Plaintiff first asked him for a mattress because of his injury it was too painful to sleep on the steel rust bunk. (Every Individual In Custody Is suppose to have one unless restricted which Plaintiff was not on any Crisis watch or strip out at this time.) He didnot give Plaintiff one. The next day after being sleep depraved he asked this Prison Guard could he speak with a crisis team mental health member. He stated I'm a certified crisis team mental health member. Plaintiff explained he was feeling suicidal and needed to go on watch. He stated "it didn't

⑦

work like that in Menard. That they had to see blood or Plaintiff actually hanging from a Sheet feet not touching any surface." Plaintiff said "I'm going to cut up then." He said "okay, I'll be back later to See." Plaintiff found a staple and begin cutting his self. Everytime he came back to check Plaintiff would show him and he would say. That's not good enough. Plaintiff then smeared his blood on the window of the cell so that he could See how much blood was coming out. No matter what he would say that's not good enough.

O. Defendant # 14 Jane/John Doe, Wexford Services

P. Defendant # 15 Jane/John Doe, Mental Health Services

Q Defendant # 16 Jane/John Doe Menard Prison Staff

1. Parties to previous lawsuits:
   Plaintiff(s): West
   Defendant(s): Atchison

2. Court (if federal court, name of the district; if State court, name of the County): Southern District

3. Docket number: Not available at this time present facility won't give me any of my property including my legal material.

4. Name of Judge to whom case was assigned: Not available at this time present facility won't give me any of my property including legal material.

5. Type of case: Civil right action

6. Disposition of case: It was dismissed. Was it appealed? Yes

7. Approximate date of filing lawsuit: Not available at this time present facility won't give me legal work.

8. Approximate date of disposition: Not available at this time present facility won't give me any of my property/legal material.

9. Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?" I believe it was for failure to state a claim, I was given (2) two strikes because I tried to appeal but did not know how to appeal.


1. Parties to previous lawsuits:
   Plaintiff(s): West
   Defendant(s): Butler

2. Court: Southern District

3. Docket number: Not available at this time menard won't give me any of my property including legal material since arrival.

4. Name of Judge: ~~Not available at this time present facility won't give me any including legal property.~~ Judge Wilkinson

5. Type of case: Civil right action

6. Disposition of the case: It was severed into anywhere from 9 to 11 cases that Plaintiff never wanted or intended to make as a civil violation. While trying to read through all the cases to figure out which one(s)he intended to fight and which one he wanted to dismiss he received another strike on one of the cases he intended

⊘ ⑨

to ask the courts to dismissed.

7. Approximate date of filing lawsuit: Not available at this time present facility won't give me legal work etc.

8. Approximat date of disposition: Not available at this time Menard won't give me legal work etc.

9. Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the Court tell you that you received a "Strike?" I received a strike in one of the cases that the courts forced me to have by Severed cases. When I explained this to Judge Wilkinson, he called all of the other Judges and explained what had happened the last of the filing fees was forgiven and I settled the case(s) that I intended to fight which was only 2 cases. So I settled this case. But I still don't know what really was done about the Strike So I have waited So long to file this because I have been trying to gather enough money to reach $402.00 for filing fee because I'm really in emergency need of some Medical care.

10

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☒Yes ☐No

B.   If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)).  FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

   1.   Parties to previous lawsuits:
   Plaintiff(s):  West

   Defendant(s):  Hosey and Catteneo

   2.   Court (if federal court, name of the district; if state court, name of the county):  Northern District

   3.   Docket number: Not available at this time present facility won't give me any of my property including any legal material

   4.   Name of Judge to whom case was assigned: Not available at this time present facility won't give me any of my property including legal material

   5.   Type of case (for example: Was it a habeas corpus or civil rights action?):  Civil rights action

   6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?):  It was settled.

Rev. 10/3/19



7. Approximate date of filing lawsuit: Not available at this time present facility won't give me legal work etc.

8. Approximate date of disposition: Not available at this time present facility won't give me any of my property/legal material.

9. Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?" I won in part and was to take the other part to trial, but my Attorney settled the case on the date of trial.

## III.   GRIEVANCE PROCEDURE

A. Is there a prisoner grievance procedure in the institution? ☒ Yes   ☐ No

B. Did you present the facts relating to your complaint in the prisoner grievance procedure?   ☒ Yes   ☐ No

C. If your answer is YES,

1. What steps did you take? I spoke with RN Reba Engelage when she did her rounds, to no avail. I also had another Individual in Custody to write to health Care Sick call Several times for me, to no avail. I also had one helpful Staff member to write a Sick call request for me to no avail. I spoke with Assistant warden about my Concerns to no avail. I had Individual in Custody to file a emergency grievance on my behalf, the warden responded deeming it a emergency Still no help. I had my family members calling Still no help. Went on Suicide watch by Cutting myself still no help. 2. What was the result?

I didnot receive any treatment because Staff from a prison is who caused my injury

D. If your answer is NO, explain why not.

E. If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?   ☒ Yes   ☐ No

F. If your answer is YES,

1. What steps did you take? Spoke with RN nurse Reba Engelage, had multiple letters wrote, Spoke with Assistant warden, had mental breakdown and cut myself hoping to get medical attention but was only put on Suicide watch. Told mental health Staff daily Still no medical attention, filed grievances only the first one was Processed still no medical attention. When I received a Attorney phone call I was finally Seen by a nurse but she only asked me 2 questions and I wasn't ever called back for a follow up until I spoke with mental Health Dr. Carridge.

Rev. 10/3/19

(12)

2.   What was the result? Dr. Carridge first tried to call Medical but Prison Guard Atkins told him to stay in his lane that he was mental health and not Medical. Dr. Carridge explained that he as well as anyone I explain My medical need to could be held liable for not providing medical care. (they had the rest of convo. outside of earshot) I was later seen and prescribe Medication but told surgery was not possible if needed for several reasons,

G.   If your answer is NO, explain why not.

H.   Attach copies of your request for an administrative remedy and any response you received.  If you cannot do so, explain why not:

( See Exhibit 1 )

(13)

## IV.   STATEMENT OF CLAIM

A.   State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated.  Do not include legal arguments or citations.  If you wish to present legal arguments or citations, file a separate memorandum of law.   If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

((Background) On October 14, 2021 Plaintiff was assaulted by Prison Guards in a prison in the Northern District, while he was on Crisis watch. To cover up the assault Prison staff fabricated a violent assault report against Plaintiff then transferred him to Menard Correctional center)- Now Concerning Complaint Plaintiff now files, upon arrival as in previous Prison he Complained about extreme pain in his left shoulder, back, and chest area. This was documented by Internal Affairs outtake, and intake via Camera footage. Plaintiff was in so much pain being handcuffed behind his back with only one pair of handcuffs that he was not able to attend out of cell visits with the mental health Staff everyday and had to section those days off to when it was Mandatory. He was not allowed to see any medical health provider because his injuries was sustained by Prison Staff members. plaintiff had others aid him, including his family outside of prison trying to help him get medical attention. Staff/Counselors was telling Plaintiff's family who were calling that he was seen by a Doctor and that Plaintiff was doing well and in good Spirits. Plaintiff was then moved to a isolated cell away from the others that had been helping him especially to Contact his family. He was placed in a cell with no mattress Just steel bunk, Super Max cell, which, Sleep was already hard to come by, but especially being he could not lie down on his back or left side due to injury. Plaintiff asked Prison Guard Bent Could he see mental health he felt suicidal and was told "in Menard we have to see blood or you dying to go on watch. The night came and plaintiff found a small paper staple and cut himself with it. Prison Guard Bent Said he could'nt see the blood and walked away. I asked the 11 to 7 Shift Prison Guard he informed me that no mental health is here on night Shift I would have to wait til the morning. The next morning Plaintiff Could not get the Prison Guard to tell him his name or get him any help he stated later he was busy and would'nt stop for Plaintiff. I end up getting a wellness check from mental health due to my family Calling the Prison. Before mental health Came they placed a mattress outside of my door as if they were going to give it to me. I explained everything I had been through to mental health and told them I cut up. The Black lady Mental health told me not to do that because they would let me die down here and that I see that I Still did not receive any help. She said she seen the mattress outside my door so that was a Start. But when she left later that night Prison Guard took the mattress back Still not giving me a mattress. That morning being totally Sleep deprived I cut again (Self harm) Mental health Marberry was doing a follow up with my neighbor, She would'nt acknowledge me So I asked the Prison Guard escorting her Could I show her my fresh cut which I Just did. When she Saw it she became angry and Stated I don't have time for that, and walked away. Some time a day later I was seen by Internal Affairs because of a wellness check because of my family calling. I explained to them everything I had been through even the fact I had'nt been given a mattress, and that I Self harmed, I was finally granted access to mental health where I was placed on Crisis watch again. But everyday it was the

Rev. 10/3/19

(14)

Same story from even different ones which was that's not our lane we do mental health not medical. I inform them that I was self harming to get medical treatment and still no help. I end up getting a attorney phone call. Approximately 20 to 30 minutes before receiving this call the nurse finally called me on October 25th, 2021. She asked me 2 questions where is the pain? I told nurse Engelage it was my upper left back, shoulder, and collar bone chest area. Then she asked could I lift my arm? I said no even being handcuffed like this is almost unbearable pain if I had to rate it, it would be a ten. Nurse Engelge, said you should be seen tomorrow, so let your attorney know you'll be seen tomorrow. But she didn't realize that was a criminal attorney and the attorney don't ask about medical concerns. I was not seen the next day either. On October 27, 2021, some attorneys came through while I was still on crisis watch, I first talk to a attorney name Amanda Antholt, I told her about what I had to do to get placed on crisis watch and why. I asked her could she help me get some medical attention. She spoke to them because the next day nurse Engelage told me that I had told the attorney that "she" would not let me get medical attention, and since I wanted to play that game lets see who was going to help me now. Although I had never told anyone that a specific person wasn't allowing me medical attention I just stated that I had not received medical attention since being there outside of the 2 questions. I also spoke with assistant warden Reickart, who was walking with attorney Antholt. He placed my name in his phone which I thought he was addressing my medical concerns. But minutes later 2 female prison guards came almost out of breathe bringing him a small manela envelope with information about my background. I still not see any medical treatment in the following days. Since being in Menard I had been having so many problems with anytype of medical treatment. They were'nt giving me my high blood pressure medicine or my naurotin (nerve damage medicine) I continuously tried to get medical attention because everyday and night I could not ever escape the pain. My family was calling even filling out release Hippaa forms. Nothing helped not even the emergency grievance which the warden deemed a emergency. But on December 4, 2021, I saw a mental health Dr. Carridge, when I told him about my injury he tried to get on the phone to call health care to schedule a appointment for me. Prison guard Atkins told him to mind his business and stay in his lane, that he was suppose to be dealing with my mental health not medical and that I was here for assaulting a staff. Dr. Carridge told him it didn't matter why I was here but he could be held liable knowing that I was in medical need and not reporting it. Some words were had back and forth and then they move the conversation away from the door so I couldn't here anything else that was said. On December 6, 2021, I was finally called to be-seen by P.A.; A. Dearmond, (Physical Assistant) I explained what had happened, the pain I was in and asked could I get a double cuff permit because

(15)

on the pain of having one cuff on. I was granted an approximately 3 month permit, and She prescribed me Some pain pills that She thought would help me out but they don't take away the pain name, Diclofenac SOD PR 75MG Tab. She then informed me that this couldn't have happened to me at a worser time because although She could do everything a Doctor could do. That at this time Wexford has not given Menard a Doctor that they had one but hadn't gave us one and that we didnot have a medical director. (I assume that this has Something to do with what She told me next, which was.) That the good part is bones have a Wonderful way of healing on their own. That She would Schedule for me to have a xray done. But if I did in fact have "a" or "some" broken bones that Corrective Surgery may not be a option. But that I could get therapy. Then She asked me how long do I have in Segregation when I told her a year She told me that that would be a problem too because She didn't know how they would do therapy even if She ordered it because of My Segregation placement. She then gave me Some pages of Self therapy that I could do on my own. Before I left She told me that even though Some of the things I informed her about regarding my injury Concerned her. That hopefully I don't have a break, but that I Should Keep my fingers Crossed that we get a medical Director. On December 29, 2021, I was finally given a Xray. Being that my pain has only lessened a little bit Since and I still cannot move my left arm like I used to and my back Shoulder and collarbone chest pain is Still there and tender to the touch. I'm not being told what's going on with my health only excuses about what this prison don't have at this time. I really need medical help first and formost. This Complaint Plaintiff brings and present before this Honorable Court for Deliberate Indifference, and Inadquate Medical care, and whatever other civil violations the court may deem appropriate. Especially concerning my Mental health as well because Plaintiff became extremely depressed and feelings of hopelessness due to being in a position were everyone in authority over him does not want to aid in his Serious health Concerns in getting him medical Treatment, for mental or Emotional injury.

(16)

## PRELIMINARY INJUNCTION AND (TRO) TEMPORARY RESTRAING ORDER

Now Comes Kentes West, Plaintiff pro se, who presents this Civil rights Complaint and claim for Compensatory, declaratory, and injunctive relief as follows:

### Introduction of Preliminary Injunction

1. This action places before the court a lawsuit involving the administration of the Illinois Department of Corrections, (charged with the custody and Control of approximately 1,800 inmates), and the private medical practitioner Wexford Health Services Inc. Contracted with the State of Illinois to provide I.D.O.C. inmates with medical care.

2. This Complaint alleges that adequate medical care has been and is being refused to plaintiff by the Illinois Department of Corrections in Concert with its Contracted resident physician and partner Wexford Health Services Inc.

### JURISDICTION AND VENUE

3. Plaintiff claim for injunctive relief is authorized pursuant to 28 U.S.C. § 1651.

### STATEMENT OF FACTS

4. On October 14, 2021, Plaintiff Suffered Severe physical trauma as a result of a use of unnecessary and excessive force. Among other injuries Plaintiff Sustained damage to his upper left, front, and back Shoulder area.

5. Plaintiff was denied medical treatment and immediately transferred to Menard Prison.

6. Plaintiff since arrival on October 14, 2021, has Complained to multiple staff members ranging from Security (all the way up to the #1 and #2 Warden, Sergeant, and Prison Guards. He has appealed to multiple Health Care Staff members, and lastly to Mental Health Professionals. But has been deprived by Persons acting under color of State law.

7. On October 27, 2021 Plaintiff While on Crisis Watch, after Self harming due to being Sleep deprived and trying to get medical attention. Saw a Lawyer walking through whom he explained his Situation and asked could they Just intervene in aiding him to get pain medication and medical treatment. Which She did, and was told that I was Set up for an appointment. But that appointment was not Set up.

8. On October 27, 2021, Plaintiff also Saw Assistant Warden Reickart and informed him of his Serious medical need, and that he was having problems receiving his already prescribed High Blood pressure, Nerve damage, and lower back pain medications. Warden Reickart type Plaintiff name and number in his cell phone, and a few minutes later 2 prison Guards brought him a Small manaila envelope with information about Plaintiff. Lt. Zhang who walked up begin to read along with this Assistant Warden and Said "oh yeah I remember West is he back?" The Assistant Warden Said "yeah right here." (nodding towards Plaintiff assigned cell. He later Stated "I'll See what's going on with getting you Some medical attention.

(17)

9. On October 27, 2021, Plaintiff asked a Individual In Custody to write a Inmate grievance regarding my denial of medication, and medical treatment and mark it emergency. He placed it in the population grievance box. (This has been the only grievance since being in Menard that Plaintiff has gotten Menard's grievance staff members to process. Plaintiff has placed over 12 grievances in the box and when he asked Major Rowland about this, because CWS Vasquez and Counselor Hood will not respond to any letter asking about his missing grievances, Rowland stated there's a hole in the grievance box he's looking into it now.)

10. On October 29, 2021 Warden A. Wills deemed it an emergency.

11. On November 18, 2021 Warden A. Wills responded Concurring that Plaintiff had been receiving medical attention on multiple days." This also was not totally true. Plaintiff had only seen Reba Engelage, RN; Once on October 25, 2021 because he was about to go on a Attorney phone call next door to the nurse's station. Which she had been informed that I had a Attorney Call because before I left out she stated "tell your Attorney we saw you and you'll be scheduled to see the Doctor soon." Plaintiff also seen one nurse who brought him 2 low dose Ibuprofen pills while he was in Mental Health interview room. This occurred because of MHP Bentner. However when I tried to explain I needed to see a Doctor, I was told to drop a Sick call request.

12. On December 4, 2021, Plaintiff went to see Dr. Carridge, for a follow up on Mental Health. Plaintiff informed psych. Dr. Carridge of his mental anguish and why he begin to Self harm. Psych. Dr. Carridge, stated that does concern me that you haven't been seen about your injury. He stop the interview and stated he would go make a call to medical unit to set up an appointment. Prison Guard Atkins told psych. Dr. Carridge to stay in his lane, just to mind my mental Health cure. Dr. Carridge explained that something about liability and that Plaintiff's injury was effecting his Mental Health. Prison Guard Atkins again told him to just take care of my mental Health then because Plaintiff had ~~the help" (medical)~~ committed a staff assault. At this Dr. Carridge asked him to speak with him out of plaintiff's ear shot and eye sight.

13. On December 6, 2021 Plaintiff was call to see physician Assistant A. Dearmond. Where she explained that even if there is a break that the bones can heal themselves over time and by my injury happening months ago that my bones have already started the process of healing. That all I can get is therapy which is restricted because of my unrighteous placement in segregation. Plaintiff was also given a 3 month, 2 handcuff permit. She stated that Menard didn't have a Doctor, or a medical Director, and although she could do what a Doctor could this was a bad time because Wexford wasn't providing us with a Doctor and that I should cross my fingers that we get one Soon. She gave him pain medication.

14. Plaintiff has been and is being left to suffer in pain damage to his upper left, front, and back torso shoulder area. Because Wexford Health Services Inc. Contracted by the State of Illinois is failing to appoint a Doctor and Medical Director to Menard Correctional Center, according to physician Assistant A. Dearmond.

(18)

15. Plaintiff has been delayed treatment for months and finally given some form of pain medication in the month of December. Plaintiff's pain has become increasingly severe that the small mg. medication does little to nothing to stop the pain and mobility has become increasingly restricted.

16. Plaintiff has dropped different sick call request from December 30, 2021 to January 4, 2022, asking them to reconsider the decision to deny me medical care and letting them know the extent of my pain and suffering and inability to get a night's sleep. On January 5, 2022 Reba Engelage informed Plaintiff to stop writing he would be seen the next day.

17. On January 6, 2022 Plaintiff was called to sick call and nurse nicole mentioned some medical terms about nerves and muscalature things being the cause of my inability for movement and pain. I couldn't understand alot of the medical stuff she was saying. Only that it sounded as if they have no intentions on helping me to get the corrective surgery so that I could possibly get my normal movement, and this pain can be gone so I can get some sleep again. She stated reconstructive surgery would hurt worse because they would have to rebreak healed bone. But I'm willing to go through any surgery to get to lay on my back again without it being extremely painful.

18. Plaintiff has become extremely concerned too because his attempts to be seen again regarding this issue is being ignored on the grounds that I've already been seen. Even my 2 handcuff permit was only temporary and will expire in march. But my pain hasn't stop and the self therapy isn't helping Plaintiff be more mobile in movement.

19. Resulting from lack of adequate medical care - from time of injury continuing, to present, Plaintiff has increasingly suffered restricted bodily motion. His condition is current and ongoing, and has resulted in Plaintiff's inability to sleep, exercise, or even properly wash his body, without experiencing excruciating pain while trying to do it, even the therapy exercises (some of them hurt). Plaintiff's current Diclofenac SOD DR 75 mg. prescription has been and is wholly inadequate for his pain management.

20. Further, because of restricted mobility and pain, plaintiff is often unable to sleep and have lost of appetite. As a result, from approximately October 14, 2021, to the present, Plaintiff has suffered a loss of 30 pounds in body weight and increased physical weakness.

21. By the absence of adequate medical treatment, Plaintiff's upper left side shoulder area and overall physical condition has deteriorated. With the physical pain and incapacity has come a general loss of life's amenities and privileges. Plaintiff is now unable to wash his body properly, scratch his back when it itch, exercise, to pray properly because of difficulty in movements, or even to go outside for fresh air and sunshine. Plaintiff now succumbs to severe and prolonged spells of depression, while at the same time suffering from a prevailing and deep-seated anxiety over his condition, future, and inability to defend himself while within the hostile prison environment that menard prison has to offer which is the worst in the state.

(19)

## EXHIBITS

22. See Exhibit 1, 1-4.
23. See Exhibit 2.
24. See Exhibit 3, 1-10, And Exhibit 3-B

## CAUSE OF ACTION

25. Defendants Warden Anthony D. Wills, Assistant Warden Reickart, RN Nurse Reba Engelage, Physician Assistant A. Dearmond, and Wexford Health Services Inc., were aware of Plaintiff's serious medical need for surgery and adequate pain medication, but were deliberately indifferent to Plaintiff need by persisting in an ineffective course of pharmaceutical treatment which was outside the limits of professional standards. The defendants' deliberate indifference to Plaintiff's serious medical need caused his injury to deteriorate and caused unnecessary pain and suffering, in violation of the Constitutional Eighth Amendment Prohibition against cruel and unusual punishment.

## TEMPORARY RESTRAINING ORDERS (TROs)

26. Plaintiff understand that some courts do not like to rule on preliminary injunctions and TRO's. However Rule 65 of the Federal Rule of Civil Procedure governs preliminary injunctions and TRO's. And in certain cases such as this one when power goes unchecked it only open doors for further miscarriage of justice to occur. Therefore Plaintiff move this court to also take into consideration the history along with the present of this requested action.

27. Plaintiff was given a assault DR504, to cover up the abusive beating he sustained from prison guards. Plaintiff has tried to challenge this through Inmate Grievance procedure, but Menard's Grievance procedure has not been available to any grievance plaintiff has filed on his own accord. Due to this grievance procedure not being available to Plaintiff, he will have to serve this segregation sentence out. Which He's now serving over a year of segregation time and will be confined to North 2 unit for the duration of that segregation term. RN Reba Engelage, is the 5 day nurse in North 2, and was also the 5 day nurse before plaintiff left in 2019. In 2018, While in cahoots with other prison guards, including her Brother-in-law, Wes Engelage; who is about to be sergeant of North 2 Health care unit, set plaintiff up to be assaulted by a white supremacist inmate who boasted beforehand that he had 2 weeks before he was to be transferred, and Sergeant Lindenberg said he would set it up for plaintiff to be attacked by him while in hand-cuffs. It in fact happened as that inmate said it would. RN Reba Engelage failed to report the true accounts of Plaintiff's injury. ① Nurse Engelage is still up to the same old unchecked tactics. Plaintiff asked her daily to be placed on

⟨20⟩

Sick Call to report his injuries to be seen by a Doctor. She failed to place Plaintiff on Doctor's appointment list, because it is word among staff that Plaintiff sustained his injuries from the cause of Plaintiff assaulting a staff member. Which is false.

28. RN Reba Engelage has been left in this position because over majority if not all of the time whenever staff members beat a inmate, they are normally brought to this building or the beating occurs in this building. She will continue to protect prison staff who don't want medical attention documented or/and given to the inmate they have beaten or set up to be beaten. After receiving notification of this complaint she will certainly be out to get Plaintiff. And as it is Plaintiff is in no way to defend himself at the moment. It is not if, but when prison staff get ready to come for Plaintiff he is going to need medical care. Reba Engelage will make sure as she has already been doing to make sure Plaintiff won't get medical attention. Plaintiff knows its a matter of time because Prison Guards in this very building has spread and misinformed prisoners that Plaintiff is a "Snitch". Where they have even gave his name and number to a inmate name Maurice L. Wallace; who had a mental health, Segregation claim in this District, who wrote his court appointed Attorneys with the information he was given by Prison Guard John McCaleb, and got my full complaint, with Exhibits which one was my sister's address and phone numbers. She received letters saying that Plaintiff was a snitch, she had a snitch for a brother and if she didn't want them to kill me she would send their friend some money. She sent the letters to this prison to show the warden, and I.A. never investigated it because one of their own staff members were the cause of the information getting in his hands. Justine Engelage is her husband who is a Lieutenant and rumored to be up for a major position, Wes Engelage is her Brother-in-Law up to be a Sergeant.

29. Mental Health Marberry has made it her business not to allow Plaintiff, who has a year and 1 month in segregation to be in any groups which is required according to Rashoo V. Baldwin. Knowing these small cells deteriorate the mind.

30. Sergeant Chitty is a 5 day sergeant in North 2 cell house, has had it out for Plaintiff for years and now has interferred with plaintiff getting medical

① Reba Engelage was RN nurse that after countless request from plaintiff about his now known to be broken thumb, which Prison Guards broke, finally called plaintiff on a Sunday when no one would be in Health Care Unit of North 2. Had the door closed which is normally opened, and a ESR inmate (ESR inmates are to be escorted with 2 prison guards at all times.) He was also a Level E, (which is a high escape risk inmate). He was allowed to wait and attack plaintiff while plaintiff was handcuff behind his back, and he had no handcuffs on. Reba Engelage saw this, but wrote in her medical report that Plaintiff got headbutted. And she never mentioned that plaintiff had a injury to his thumb because Prison Guards had done it. (see Exhibit 4, 1-4)

(21)

attention, medication, and didn't allowed me to get a mattress for 3 days which is required in all segregation cells.

31. Prison Guard Bent is 5 day Prison Guard in North 2 unit, who denied plaintiff a mattress for 3 days. While putting one in front of the cell door as if he intended to give it to Plaintiff when mental Health did a wellness check due to Plaintiff's family calling the Prison. he also denied Plaintiff medical attention telling Plaintiff his cut was not good enough for him to call mental health for him. He also gave Plaintiff mail to a mentally ill prisoner who is known for threatening and yelling obscenities at everyon Staff and inmates alike. When Plaintiff informed him of his mistake, he stated "I don't make mistakes, you should understand I'm in Control of what you eat to where your mail goes and don't you ever forget that. Plaintiff wrote a grievance on these incidents and never received a response on either. for the aforementioned reasons plaintiff ask for a TRO against aforementioned staff members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter an order Issuing declaratory relief, declaring that the acts and omissions of the defendants have violated Plaintiff's rights, and Stating the defendants' duties with respect to those rights. Issuing Injunctive relief and Temporary Restraining Order, Commanding the defendants to (1) provide Plaintiff with adequate pain medication (2) provide for or otherwise facilitate the Corrective or reconstructive surgery necessary to remedy Plaintiff's medical Condition, and to (3) Order a Temporary Restraining Order against R.N Reba Engelage, Justine Engelage, Wes Engelage, M.H.P. Marberry, SGT. Chitty, and prison Guard Bent; and Awarding Plaintiff Compensatory damages for the unnecessary deterioration of his physical Condition and Consequential pain and Suffering, in an amount as yet to be deduced from the evidence, but in no event in an amount less than $250,000.00; and any other relief this Court may deem Just and proper.

## V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

1.) Injunctive Relief; "Plaintiff also anticipates the discovery of documents and other evidence, within the Control of Defendant(s) that must be reviewed before any meaningful Calculation of damages, but in no circumstances will the amount in demand be less than $150,000.00. But in the event that a number is needed in the process of of having this complaint deemed Completed or incompleted, Plaintiff states Request Relief to be nothing less than $80,000.00 for Mental and emotional damages; $85,000.00 for punitive damages; and $85,000.00 for Compensatory damages. Injunctive Relief MRI, and Corrective Surgery. TRO, Restraining Order against Reba Engelage, Wes Engelage, Justine Engelage, Prison Guard Bent, Mental Health Marberry, and Sgt. Chitty: All to be sued in their Individual and Official Capacities.

## VI.    JURY DEMAND (check one box below)

The plaintiff ☒ does   ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed
on:    _____        _____
           (date)                                   Signature of Plaintiff

711 Kaskaskia Street P.O. Box 1000        Kentes West
           Street Address                            Printed Name

Menard Illinois 62259                K82893
           City, State, Zip                         Prisoner Register Number

_____
Signature of Attorney (if any)

Rev. 10/3/19                        (23)

**United States District Court**
**SOUTHERN DISTRICT OF ILLINOIS**

West, Kentes _____ )
_____Plaintiff,_____ )
)
VS. )                              Case No.: _____
)
Anthony Wills, Wexford etc. )
_____Defendant_____ )
)

### NOTICE OF FILING

TO: Anthony D. Wills
711 Kaskaskia Street
Menard Correctional Center
Menard Illinois 62259

TO: Wexford Health Services
711 Kaskaskia Street
Menard Correctional Center
Menard Illinois 62259

TO: Assistant Warden Reickart
711 Kaskaskia Street
Menard Correctional Center
Menard, Illinois 62259

TO: Physical Assistant, A. Dearmond
711 Kaskaskia Street
Menard Correctional Center
Menard, Illinois 62259

PLEASE TAKE NOTICE that on _____, 20 22 , I have provided service to the person(s) listed above by the following means:

☒    Electronically filed through Menard Correctional Law Library

☐    Institutional mail at _____ Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service.

### DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 USC 1746 and 18 USC 1621, I declare under penalty of perjury that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

Date: January 18, 2022

/s/ _Kentes West_
NAME: Kentes West
IDOC#: K82893
Menard _____ Correctional Center
P.O. Box 1000
Menard _____, IL 62259

(24)

Exhibit 1
1 of 4

1st Lvl rec: OCT 2 0 2021

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender's Grievance**

2nd Lvl rec:

| Date: 10-27-21 | Offender (please print): West Kentes | ID #: K82893 | Race (optional): Black |

Present Facility: Menard C.C.    Facility where grievance issue occurred: Menard CC

345-10-21 MEN

RECEIVED NOV 01 2021 MENARD CC GRIEVANCE OFFICE

**Nature of grievance:**

☐ Personal Property   ☐ Mail Handling   ☑ Medical Treatment   ☐ ADA Disability Accommodation

☐ Staff Conduct   ☐ Dietary   ☐ HIPAA   ☐ Restoration of Sentence Credit

☐ Transfer Denial by Facility   ☐ Other (specify): _____

☐ Disciplinary Report

_____ Date of report _____   Facility where issue occurred _____

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board

Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor

Chief Administrative Officer, only if EMERGENCY grievance

Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drug issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information each person involved):

I've been em Menard since 10/4/21. I have requested multiple times for medical attention due to an injury to my left shoulder. I am in pain; there is swelling and inflammation; and also I have a limited range of motion due to this injury.

I am being denied all pain meds and x-rays

☐ Continued on reverse

**Relief Requested:**

Sick Call appointment
x-rays
Pain Management Medications

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☐ Check if this is NOT an emergency grievance.

West Kentes    K82893    10/27/21
Offender's Signature    ID#    Date

(Continue on reverse side if necessary)

**Counselor's Response** (if applicable)   Date Received: _____   ☐ Send directly to Grievance Officer

☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response:

_____ Print Counselor's Name _____   _____ Sign Counselor's Name _____   _____ Date _____

Note to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance office

**EMERGENCY REVIEW:**   Date Received: 10-29-21

Is this determined to be of an emergency nature:

☑ Yes, expedite emergency grievance
☐ No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure

page-25

_____ Chief Administrative Officer's Signature _____   10-29-21   Date

IIE - Medical treatment(F)

Page 1 of 2

N2-x21

Exhibit 1
2-of-4

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 11/01/2021 | Date of Review: 11/01/2021 | Grievance # (optional): 345-10-21 |
| Offender: West, Kentes | | ID#: K82893 |

**Nature of Grievance:**

Medical Treatment

**Facts Reviewed:**

Individual in custody submitted a grievance dated 10/27/2021 and grieves he has been in Menard since 10/14/2021 and has requested multiple times for medical attention for an injury to his left shoulder. He is in pain and there is swelling and inflammation. He states he has limited range of motion and he is being denied all pain meds and x-rays.

Relief Requested: "Sick call appointment, x-rays, pain management medications."

Grievance #345-10-21 was received on 10/28/2021 and marked emergency by the offender. It was deemed of emergency nature by the Warden on 10/29/2021 and returned to Grievance Office for processing on 11/1/2021.

Forward the grievance to the Health Care Unit for review on 11/1/2021.
On 11/16/2021 Angela Crain, HCUA, RN, BSN advised that per review of the individual in custody's medical records, he was received into Menard C on 10/15/21 on an active Mental Health 10-minute Crisis Watch. It is noted the individual in custody was seen daily by nursing staff due to his Crisis Watch form 10/15/21 – 10/24/21. The individual in custody was seen by Nurse Sick Call on 10/25/21 for left shoulder pain and was referred to an MD/NP call line. The individual in custody has continued to be seen by nursing staff due to being on a Crisis Watch. The individual in custody is awaiting his scheduled appointment with an MD/NP for his left shoulder concerns.

**Recommendation:**

It is the recommendation of this Grievance Officer that the inmate's grievance be MOOT.

Kelly Pierce, CCIII - Menard Correctional Center
Print Grievance Officer's Name

Grievance Officer's Signature

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| RECEIVED Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: NOV 18 2021 | ☑ I concur    ☐ I do not concur    ☐ Remand | |

**Action Taken:**

Chief Administrative Officer's Signature                    1/18/21
Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

Offender's Signature                    K82893                    11-22-2021
ID#                    Date

page-26

Exhibit 1
3-of-4

TO: ADMINISTRATIVE REVIEW BOARD

FROM: WEST, KENTES Reg.No. K82893

DATE: NOVEMBER 22, 2021

RESPONSE TO: Grievance #345-10-21 / Nature of Grievance: Medical Treatment

Offender's / Individual In Custody's, Response To Grievance

Officer's, Response : This Grievance should not be deemed Moot, I haven't received medical attention. I start by saying This is an emergency, I really need help medical attention. Grievance Officer, Kelly Pierce, CCII's, response to this ~~aforementioned~~ aforementioned Grievance is inaccurate on several accounts. I arrived at Menard C on October 14, 2021, on the 3 to 11 shift, from Stateville CC., on an active Mental Health 10-minute Crisis Watch. (Not October 15, 2021, as Grievance Officer reported). The only person Close to a nurse I had seen up until Oct. 25, 2021, was someone I assumed to be a nurse that Swab my nose for a Covid-19 test while in the back of the van at the back entrance gate. I had been asking Mental Health everyday for help getting some Medical attention. I was informed that that may not happen due to Medical Staff in the Midst of some Struggle about forced Covid-19 Vaccinations requirements. On 10-25-21 and only that day was I called into the nurse's office where; RN, Reba Engelage, Saw me and asked me approximately 3 questions without even examining my Shoulder This is believed to have happened because I was about to have a Attorney Call. I have not been seen by a doctor, or given a temporary 2 Cuffs permit, or any type of pain Medication. Not even my already prescribed Medications are in tack. I Need help.

⑤

J.B. Pritzker
Governor



Rob Jeffreys
Director

*Exhibit 1*
*4-of-4*

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

**Name:** Kentes West

12/6/21
Date

**ID#:** K82893

**Facility:** Menard

This is in response to your grievance received on __12/02/21__. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

**Your issue regarding: Grievance dated:** 10/27/21    **Grievance Number:** 345-10-21    **Griev Loc:** Menard

- [ ] Transfer denied by the Facility
- [ ] Dietary _____
- [ ] Personal Property _____
- [ ] Mailroom/Publications _____
- [ ] Assignment (job, cell) _____
- [ ] Commissary / Trust Fund _____
- [ ] Conditions (cell conditions, cleaning supplies, etc.) _____
- [ ] Disciplinary Report: Dated: _____ Incident # _____
- [x] Other    Medical Treatment - 10/14/21- has not been seen since arrival to Menard - Wants Sick call appts, xrays and pain management meds.

**Based on a review of all available information, this office has determined your grievance to be:**

- [ ] Affirmed, Warden _____ is advised to provide a written response of corrective action to this office by _____.
- [ ] Denied, in accordance with DR504F, this is an administrative decision.
- [ ] Denied, this office finds the issue was appropriately addressed by the facility Administration.
- [ ] Denied as the facility is following the procedures outlined in DR525.
- [ ] Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.
- [ ] Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.

- [x] Other:  Mixed:  Affirm that grievant arrived at Menard on 10/14/21 as indicated, however per HCUA- was seen by nursing staff due to crisis watch daily from 10/15-10/24/21 and NSC on 10/25/21.  Call pass log also shows grievant was seen by NP on 12/06/21.

Treatment is at the discretion of the IDOC physician.  Continue to request NSC for future medical concerns.

**FOR THE BOARD:** _____
DeAnna Kink
Administrative Review Board

**CONCURRED:** _____
Rob Jeffreys
Director

**CC:** Warden, Menard _____ Correctional Center
Kentes West _____, ID# K82893

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*



**www.illinois.gov/idoc**



# Advancing the human and civil rights of people with disabilities

SELF-ADVOCACY ASSISTANCE ★ LEGAL SERVICES ★ DISABILITY RIGHTS EDUCATION ★ PUBLIC POLICY ADVOCACY ★ ABUSE INVESTIGATIONS

November 5, 2021

*EXhibit 2*

***Privileged LEGAL Correspondence***
Kentes West
K82893
P.O. Box 1000
Menard, IL 62259

Re:    *Rasho v. Jeffreys, No. 07-1298*

Dear Mr. West:

Thank you for speaking with me during my visit on October 27, 2021. I did follow up about your shoulder. The nurse stated that she did put in for you to see the doctor to have it evaluated.

In the *Rasho* class action on mental health treatment, we are working to address the failure of IDOC to comply with court-ordered reforms to mental health treatment. This includes ongoing violations with the minimum requirements for out-of-cell treatment and activity in segregation and on crisis watch. Many of you are not getting the required groups that are required for people in segregation more than 16 days or even the yard time required.

We will keep working to improve mental health treatment and conditions in Illinois prisons with the *Rasho* class action. We have filed a motion asking the court to schedule a trial for us to show that the Department of Corrections should be held in contempt of court for the ongoing violations in segregation and crisis care. Other issues we are working on right now include:

- Confidential mental health treatment
- Use of excessive force against people with mental illness
- Conditions in the segregation units
- Crisis response and care
- Access to programs (like school and jobs) for people with mental illness
- Problems with mental health treatment
- Disciplinary incidents relating to mental health

Please feel free to write to us if you have questions about the *Rasho* class action. And we always appreciate any updates about the mental health treatment and conditions at your facility. Take care and stay safe.

Sincerely,

Amanda Antholt
Senior Attorney

THE INDEPENDENT, FEDERALLY MANDATED PROTECTION & ADVOCACY SYSTEM FOR THE STATE OF ILLINOIS

MARK P. ROTATORI, BOARD CHAIRPERSON   ZENA NAIDITCH, PRESIDENT & CEO

MAIN OFFICE: 20 N. MICHIGAN AVENUE, SUITE 300 ★ CHICAGO, IL 60602 ★ EMAIL: CONTACTUS@EQUIPFOREQUALITY.ORG ★ TEL: (312) 341-0022

TOLL FREE: (800) 537-2632 ★ TTY: (800) 610-2779 ★ FAX: (312) 541-7544 ★ MULTIPLE LANGUAGE SERVICES

WWW.EQUIPFOREQUALITY.ORG



# CARE INSTRUCTIONS

**KAISER PERMANENTE**

# Rotator Cuff: Exercises

Exhibit 3
1-of-10

## Your Kaiser Permanente Care Instructions

Here are some examples of typical rehabilitation exercises for your condition. Start each exercise slowly. Ease off the exercise if you start to have pain.

Your doctor or physical therapist will tell you when you can start these exercises and which ones will work best for you.

## How to do the exercises

## Posterior stretching exercise



©Healthwise, Incorporated

1. Hold the elbow of your injured arm with your opposite hand.

2. Use your hand to pull your injured arm gently up and across your body. You will feel a gentle stretch across the back of your injured shoulder.

3. Hold for at least 15 to 30 seconds, and then slowly lower your arm.

4. Repeat 2 to 4 times.

*30*

**KAISER PERMANENTE**

# Rotator Cuff: Exercises (page 2)

## Up-the-back stretch

*Exhibit 3*
*2-of-10*




© Healthwise, Incorporated

Note: Your doctor or physical therapist may advise you to wait to do this stretch until you have regained most of your range of motion and strength. You can do this stretch in different ways. Hold any of these stretches for at least 15 to 30 seconds, and repeat 2 to 4 times.

1. Put your hand in your back pocket and let it rest there to stretch your shoulder.

2. With your opposite hand, hold your injured arm (palm outward) behind your back by the wrist. Pull your arm up gently to stretch your shoulder.

3. To progress, put a towel over your opposite shoulder. Put the hand of your injured arm behind your back and hold the back end of the towel. With the other hand, hold the front end of the towel in front of your body. Pull gently on the front end of the towel to gently bring your hand farther up your back to stretch your shoulder.

## Overhead stretch



© Healthwise, Incorporated

1. Standing about an arm's length away, grasp onto a solid surface, such as a countertop, a doorknob, or the back of a sturdy chair.

31

 KAISER PERMANENTE

# Rotator Cuff: Exercises (page 3)

Exhibit 3
3-of-3

2.  With your knees slightly bent, bend forward with your arms straight, lowering your upper body and letting your shoulders stretch.

3.  As your shoulders are able to stretch farther, you may need to take a step or two backward.

4.  Hold for at least 15 to 30 seconds, and then stand up and relax. If you had stepped back during your stretch, step forward so you can keep your hands on the solid surface.

5.  Repeat 2 to 4 times.

## Pendulum swing



© Healthwise, Incorporated

Note: If you have pain in your back, do not do this exercise.

1.  While holding onto a table or the back of a chair with your good arm, bend forward a little and let your injured arm hang straight down. This exercise does not use the arm muscles. Rather, use your legs and your hips to create movement that makes your arm swing freely.

2.  Using the momentum from your hips and legs, guide the slightly swinging arm back and forth like a pendulum (or elephant trunk) and then in circles that start small (about the size of a dinner plate) and gradually grow larger each day as pain allows.

3.  Do this exercise for 5 minutes, 5 to 7 times each day even while your shoulder is still tender from an injury or surgery.

4.  As you have less pain, try bending over a little farther to do this exercise. This will increase the amount of movement at your shoulder.

32

**KAISER PERMANENTE.**

# Rotator Cuff: Exercises (page 4)

Exhibit 3
4-of-4

## Wall climbing (to the side)



© Healthwise, Incorporated

Note: Avoid any movement that is straight to your side, and be careful not to arch your back. Your arm should stay about 30 degrees to the front of your side.

1. Stand with your side to a wall so that your fingers can just touch it at an angle about 30 degrees toward the front of your body.

2. Walk the fingers of your injured arm up the wall as high as pain permits. Try not to shrug your shoulder up toward your ear as you move your arm up.

3. Hold that position for a count of at least 15 to 20.

4. Walk your fingers back down to the starting position.

5. Repeat at least 2 to 4 times, trying to reach higher each time.

## Wall climbing (to the front)



© Healthwise, Incorporated

Note: During this stretching exercise, be careful not to arch your back.

33

 KAISER PERMANENTE.

# Rotator Cuff: Exercises (page 5)

Exhibit 3
5-of-10

1. Face a wall, standing so your fingers can just touch it.

2. Keeping your shoulder down (don't shrug up toward your ear), walk the fingers of your injured arm up the wall as high as pain permits.

3. Hold that position for at least 15 to 30 seconds.

4. Slowly walk your fingers back down to the starting position.

5. Repeat at least 2 to 4 times, trying to reach higher each time.

## Arm raise to the side



Note: During this strengthening exercise, your arm should stay about 30 degrees to the front of your side.

1. Slowly raise your injured arm to the side, with your thumb facing up. Raise your arm 60 degrees at the most (shoulder level is 90 degrees).

2. After holding the position for 3 to 5 seconds, lower your arm back to your side. If you need to, bring your "good" arm across your body and place it under the elbow as you lower your injured arm. Use your good arm to keep your injured arm from dropping down too fast during the downward motion.

3. Repeat 8 to 12 times.

4. When you first start out, don't hold any additional weight in your hand. As your strength improves, you may use a 1-pound to 2-pound dumbbell or a small can of food.

34

 KAISER PERMANENTE.

# Rotator Cuff: Exercises (page 6)

Exhibit 3
6-of-10

## Shoulder flexor and extensor exercise



© Healthwise, Incorporated

Note: These are isometric exercises. That means you contract your muscles without actually moving.

- **Push forward (flex):** Stand facing a wall or doorjamb, about 6 inches or less back. Hold your injured arm against your body. Make a closed fist with your thumb on top and gently push your hand forward into the wall with about 25% to 50% of your strength. Don't let your body move backward as you push. Hold for about 6 seconds. Relax for a few seconds. Repeat 8 to 12 times.

- **Push backward (extend):** Stand with your back flat against a wall. Your upper arm should be against the wall, with your elbow bent 90 degrees (your hand straight ahead). Push your elbow gently back against the wall with about 25% to 50% of your strength. Don't let your body move forward as you push. Hold for about 6 seconds. Relax for a few seconds. Repeat 8 to 12 times.

## Internal rotator strengthening exercise



View from above



© Healthwise, Incorporated

1. Begin by tying a piece of elastic exercise material, such as surgical tubing or Thera-band, to a doorknob.

35

**KAISER PERMANENTE.**

# Rotator Cuff: Exercises (page 7)

Exhibit 3
7-of-10

2. Stand or sit with your shoulder relaxed and your elbow bent 90 degrees. Your upper arm should rest comfortably against your side. You can squeeze a rolled towel between your elbow and your body for comfort and to help keep your arm at your side.

3. Hold one end of the elastic band in the hand of the injured arm.

4. Rotate your forearm toward your body until it touches your belly.

5. Keep your elbow and upper arm firmly tucked against the towel roll or the side of your body during this movement.

6. Repeat 8 to 12 times.

## External rotator strengthening exercise



View from above





© Healthwise, Incorporated

1. Begin by tying a piece of elastic exercise material, such as surgical tubing or Thera-band, to a doorknob. (You may also hold one end of the band in each hand.)

2. Stand or sit with your shoulder relaxed and your elbow bent 90 degrees. Your upper arm should rest comfortably against your side. You can squeeze a rolled towel between your elbow and your body for comfort and to help keep your arm at your side.

3. Hold one end of the elastic band with the hand of the injured arm.

4. Start this exercise with your forearm across your belly. Rotate the forearm out away from your body, keeping your elbow and upper arm tucked against the towel roll or the side of your body until you begin to feel tightness in your shoulder.

5. Repeat 8 to 12 times.

36

**KAISER PERMANENTE.**

## Rotator Cuff: Exercises (page 8)

*Exhibit 3*
*8-of-10*

### Scapular exercise: Wall push-ups



© Healthwise, Incorporated

Note: This exercise is best done with your fingers moderately turned out, rather than straight up and down.

1. Stand facing a wall, about 12 inches to 18 inches away.

2. Place your hands on the wall at shoulder height.

3. Slowly bend your elbows and bring your face to the wall, keeping your back and hips straight.

4. Push back to the starting position.

5. Repeat 8 to 12 times.

6. When you can do this exercise against a wall comfortably, you can try it against a counter. You can then slowly progress to the end of a couch, then to a sturdy chair, and finally to the floor.

### Scapular exercise: Arm reach



© Healthwise, Incorporated

1. Lie flat on your back. This exercise is a very slight motion that starts with your arms raised (elbows straight, arms straight).

*37*

 **KAISER PERMANENTE.**

# Rotator Cuff: Exercises (page 9)

2. From this position, reach higher toward the sky or ceiling, keeping your elbows straight. All motion should be from your shoulder blade only.

3. Relax back to the starting position.

4. Repeat 8 to 12 times.

*Exhibit 3*
*9-of-10*

## Scapular exercise: Retraction



View from above

© Healthwise, Incorporated

Note: For this exercise, you will need elastic exercise material, such as surgical tubing or Thera-band.

1. Put the band around a solid object, such as a bedpost, at about waist level. Each hand should hold an end of the band.

2. With your elbows at your sides and bent to 90 degrees, pull the band back to move your shoulder blades toward each other. Return to the starting position.

3. Repeat 8 to 12 times.

4. If you have good range of motion in your shoulders, try this exercise with your arms lifted out to the sides, with your elbows at a 90-degree angle. Raise the elastic band up to about shoulder level. Pull the band back to move your shoulder blades toward each other. Return to the starting position.

**Follow-up care is a key part of your treatment and safety.** Be sure to make and go to all appointments, and call your doctor if you are having problems. It's also a good idea to know your test results and keep a list of the medicines you take.

38

 KAISER PERMANENTE.

## Rotator Cuff: Exercises (page 10)

*Exhibit 3*
*10-of-10*

## Where can you learn more?

Go to http://www.kp.org

Enter J005 in the search box to learn more about **"Rotator Cuff: Exercises"**.

© 2006-2010 Healthwise, Incorporated. Care instructions adapted under license by Kaiser Permanente. This care instruction is for use with your licensed healthcare professional. If you have questions about a medical condition or this instruction, always ask your healthcare professional. Healthwise disclaims any warranty or liability for your use of this information.

39

**KAISER PERMANENTE.**

Exhibit
3-B

## ILLINOIS DEPARTMENT OF CORRECTIONS

## MEDICAL PERMIT

## MENARD CORRECTIONAL CENTER

OFFENDER NAME: _West, Kentis_    ID NUMBER: _K82893_

HOUSING UNIT: _N2 2-21_

| ☒ New Order | ☐ Change |
| ☐ Renewal | ☐ Cancel |

| | | |
|---|---|---|
| ☐ Lower Bunk | ☐ ~~Slow Walk~~ | ☐ Hearing Aid |
| ☐ Low Gallery (A/B) | ☒ Double Cuff | ☐ Front Cuff |
| ☐ Medical Lay-In | ☐ Feed-In Cell | ☐ No Yard |
| ☐ Shower on Gallery | ☐ C-Pap Machine | ☐ Heel Cup Size:_____ |
| ☐ Knee Sleeve Size:_____ | ☐ Scrotal Support Size:_____ | ☐ TED Hose Size:_____ |
| ☐ Neck Collar Size:_____ | ☐ Mouth guard/Cup | ☐ No Work |
| ☐ Other: | | |

Start Date: _12/6/21_    Expiration Date: _03/6/22_

(Short term til X-ray)

Authorized by:

MD _A Deamond_    Date: _12/6/21_

I understand that if this permit is altered; a disciplinary report will be written with termination of this permit. I also understand that it is my responsibility to maintain this permit in good condition and to produce to proper authority when requested.

Offender Signature: X _Kentis West_

Distribution:  White copy:  Medical Records/OTS:
         ☐ Placement
         ☐ Cell House Sgt.
         ☐ D.O.N Secretary

     Yellow Copy:  Offender

12-2

MEN 0021 (EFF. 5/2015)

50

STATE OF ILLINOIS                )
                                 ) SS
COUNTY OF _Randolph_             )

## AFFIDAVIT

I, _Kentes West_ being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto:

_That every word that is aforementioned in this attached 1983 Complaint Preliminary Injunction and Temporary Restraining Orders (TROS) is True and Correct to the best of my understandings and recollect. And that I Kentes West have read the foregoing and declare under the Penalty of perJury, 28 U.S.C. § 1746, with nothing more, no notarization, under the laws of the United States that the statements contained herein are true and correct to the best of my belief and knowledge._

Subscribed and sworn to before me
On the 10th day of _Feb._ , 2022

_Shelley A Shevlin_
NOTARY PUBLIC

Respectfully submitted,

_Kentes West_

OFFICIAL SEAL
SHELLEY A SHEVLIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/29/24

49

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

_____ **MENARD CORRECTIONAL** _____ Center

Exhibit 4
1 of 4

**Abrasions**

**Offender Information:**

Last Name: West    First Name: Kenles    MI: ____    ID#: K82893

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/25/18 10a | S) - What caused the injury: alteration c another inmate <br> accidental    work related    (assault)    self-inflicted <br><br> - Where did it happen? <br> N² Infirmary <br><br> - What time did it happen? <br> Approx 955a <br><br> - Do you have a medical condition or are you taking any medication that would cause excessive bleeding or problems healing? <br> no <br><br> - Do you have any allergies to medication? <br> NKDA <br><br> - When was YOUR last tetanus? <br> less than 10 year ago <br><br> O) T 98² P 98 R 16 BP 146/86 WT <br><br> - Characteristic and severity of pain <br> Upper mid Back, left Shoulder, left forearm all have Sm scratches <br><br> - Size and depth of injury <br> All Scratches of depth - ∅ bleeding <br><br> - Presence of contaminates or ground-in debris <br> no-no <br><br> - Bleeding or drainage; note amount and characteristics <br> no <br><br> - Swelling, edema and/or any disfigurement <br> none <br><br> - Signs and symptoms of impaired circulation <br> pulses present | P) MD REFERRRAL IF:    f/u p altercation <br><br> - Uncontrolled bleeding <br><br> - When exchange of body fluids may have occurred <br><br> - Laceration of eyelids, lips, ears or over joints/fingers <br><br> - Wounds not responding to protocol treatment <br><br> - If injury is self-inflicted, refer to Mental Health <br><br> - Any other clinical symptoms or worrisome symptoms by the nurse <br><br> MH here to speak c I/m <br><br> **Nursing Intervention:** <br> (verify medications and allergies prior to treatment) <br><br> - Cleanse with antiseptic soap <br><br> - Apply direct pressure to wound and sterile compress if needed to control bleeding – elevate if possible <br><br> - Acetaminophen 325 mg, 1 – 2 tablets t.i.d. PRN X 3 days (18 tablets) <br><br> - Dress abrasion as necessary <br><br> - Complete injury report, when applicable <br><br> **OVER** |

Distribution: Offender's Medical Record

_Printed on Recycled Paper_

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

51

Exhibit 4
2 of 4

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

### MENARD CORRECTIONAL ____ Center

**Abrasions (Cont.)**

**Offender Information:**

| West | Kented | | ID#: K82893 |
|---|---|---|---|
| Last Name | First Name | MI | |

| Date/Time / OINT note Subjective, Objective, Assessment | | Plans |
|---|---|---|
| 4/25/18 10a | S/P other inmate head butted this I/M in back of head. Ø swelling or redness noted. PERLL - Denies loss of consciousness - A&Ox3 - Denies N/V | - 0.5 cc Tdap IM (If the following) <br> - Break in the skin <br> - The patient is not allergic to tetanus toxoid <br> - If none in past ten years. <br><br> - Observe for any allergic reaction after injection is administered |
| | | **Patient Teaching:** |
| | | - Signs of infection (swelling, pus formation, redness, heat, streaking, etc.) |
| | | - Signs of impaired circulation (cold extremities, blanching nails, etc.) |
| | | - If injury could have been prevented, instruct on safety measures |
| | | - Need for follow-up referral at sick call if infection and/or impaired circulation develop |
| | | **FOLLOW-UP:** Consider, and schedule if indicated, a wound check in the clinic or nurse sick call in 24 hours; PRN thereafter, depending on severity and the patients ability to provide self-care |
| | | Nurse Signature |
| | A) Alteration in Skin Integrity | Payment/voucher    YES    NO |

ILLINOIS DEPARTMENT OF CORRECTIONS

Offender Outpatient Progress Notes

_____Menard Correctional_____ Center

Exhibit 4
3 of 4

**Non-Specific Discomfort**

Offender Information:

West                    Kentes                    ID#: K82893
    Last Name                First Name        MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/25/18<br><br>109 | RN NOTE    LPN/CMT NOTE<br><br>S) - Any Allergies? NKDA<br>- Location of pain / discomfort?<br><br>Right wrist, left knee.<br>- Describe pain<br>Stabbing    Throbbing   (Constant)  Intermittent    Etc.<br>Burning, Sharp, numbness<br>- Have you had this pain before and how was it treated?<br><br>NO - N/A<br>- Rate pain level scale of 1 - 10?<br><br>4<br>- Duration of pain?<br><br>July 12th 2018<br>O)<br>98² P 98 R 16 BP 144/88 W/T<br>- Signs of obvious discomfort<br><br>⊘ Swelling ⊘ bruising noted<br><br>to wrists or knee<br>- Observations related to body part affected<br><br>— S/P Rt wrist having numbness/burning<br>Sensation "Begins in thumb and shoots<br>to my wrist". The pain increases<br>when hand touches/grabs objects<br>Able to move fingers + rotate wrist w/nc<br><br>— Left knee - He has previously seen MD<br>+ was ordered lab work before<br>Beginning on pain medication, but<br>has not been seen since<br>Blood work was drawn<br><br>A) Non-Specific Discomfort | P) MD Referral if:<br>Wrist / Knee pain<br>- Patient presents more than twice at NSC for c/o same discomfort within one month<br><br>- Patient presents with signs of acute, severe discomfort<br><br>- Patient has abnormal vital signs<br><br><br><br><br>No MD referral:<br><br>- Acetaminophen 325 mg, 1 - 2 tablets t.i.d. PRN X 3 days (18 tablets)<br><br>- (Ibuprofen 200mg 1-2 tabs t.i.d. PRN for 3 days (18 tabs))<br><br>Patient Teaching:<br><br><br><br>- Return to see provider if symptoms worsen or interfere with daily functioning<br><br><br><br><br><br><br><br><br><br><br><br>Nurse Signature<br>R Engelcane<br>Payment Voucher    (YES)    (NO) |

53

Patient Offender's Medical Record

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

Exhibit 4
4 of 4

**Menard Correctional** _____ Center

| Offender Information: | | | |
|---|---|---|---|
| West _____ Last Name | Kentes _____ First Name | _____ MI | ID#: K82893 |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/31/18 | MD note | |
| 945 | S/P altercation on 7/25/18 | |
| | Rt Wrist Pa | |
| 136/80 | (L) left knee | |
| | Total Body Pain | |
| 96 | Head / Neck / Back / Knees | |
| 16 | Wrist   Refuses to Narrow Down | |
| | Surgical scan (R) Hand   his & Sx | |
| | Wants Narcotic) | |
| | Wants Neurontin) | |
| | Advised Tylnol / Ibuprofen | |
| | | Bld dugn MD) |
| | | Annthu Clnt 7/31/18 |

54

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002
(Replaces DC 7147)



$2-10-22$

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

West, Kentes     K82893
Name                 ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1. Is this a new civil rights complaint or habeas corpus petition?    (Yes) or No

   If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2. Is this an Amended Complaint or an Amended Habeas Petition?    Yes or (No)

   If yes, please list case number: _____ N/A _____

   If yes, but you do not know the case number mark here: _____

3. Should this document be filed in a pending case?    Yes or (No)

   If yes, please list case number: _____ N/A _____

   If yes, but you do not know the case number mark here: _____

4. Please list the total number of pages being transmitted: _54_

5. If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| — Complaint | 24 |
| — Exhibits | 16 |
| — Motion For Recruitment of Counsel | 2 |
| — Motion To Proceed Without Costs and Trust Fund Attachments | 7 |
| — Affidavit | 1 |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record. Discovery materials sent to the Court will be returned unfiled.

— Exhibits    4