**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KENTES WEST,** <br> **#K82893,** <br><br>     **Plaintiff,** <br><br> v. <br><br> **ANTHONY D. WILLS,** <br> **REICKART,** <br> **WEXFORD HEALTH SERVICES,** <br> **REBA ENGELAGE,** <br> **A. DEARMOND,** <br> **MELVIN HINTON,** <br> **MARBERRY,** <br> **R. DRAPER,** <br> **BORDO,** <br> **BENTNER,** <br> **CHITTY,** <br> **RACHEL,** <br> **BENT,** <br> **JOHN/JANE DOE 1,** *Wexford Services,* <br> **JOHN/JANE DOE 2,** *Mental Health Services,* and <br> **JOHN/JANE DOE 3,** *Menard Prison Staff*, <br><br>     **Defendants.** | **Case No. 22-cv-00242-SPM** |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Kentes West, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center (Menard), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. West claims he is being denied adequate medical care for his shoulder injury and corresponding pain and mental health treatment. He seeks monetary damages and injunctive relief. Along with the Complaint, West filed a motion for a temporary restraining order and preliminary injunction.

The Court must review the Complaint under 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

West alleges the following: He was assaulted by prison guards at another IDOC facility on October 14, 2021. (Doc. 1, p. 14)). That same day, West was transferred to Menard. (*Id.* at p. 17). Following the assault, he had extreme pain in his left shoulder, back, and chest area. (*Id.* at p. 14, 17). Upon his arrival at Menard, he began complaining about his injuries to multiple staff members. (*Id.*). West was in so much pain when he was handcuffed with his hands behind his back that he was unable to attend out of cell visits with the mental health staff every day and would only attend the visits that were mandatory. (*Id.*).

West asserts he is not receiving medical attention because the staff believes he sustained his injuries while assaulting a prison staff member, which is untrue. (Doc. 1, p. 14, 21). Others, including his family members, have tried to help him obtain treatment by calling Menard. When they call, staff and counselors falsely tell West's family members that he was seen by a doctor, he is doing well, and he is in good spirits. (*Id.*).

At some point, West moved to an isolated cell away from the other inmates who had been helping him contact his family. (Doc. 1, p. 14). Because of his injuries, West had difficulty sleeping and was unable to sleep on his back or left side. Despite these issues, he was placed in a super max cell with no mattress, only a steel bunk, making it even harder to sleep. (*Id.*). West asked Defendant Bent, a prison guard, for a mattress and told Bent that his injury made it too painful to sleep without

one. (*Id.* at p. 7). Bent refused the request. Defendant Sergeant Chitty also did not allow West to receive a mattress. (*Id.* at p. 22). West went without a mattress for three days.

Because West was sleep deprived and not receiving medical treatment, he began to inflict self-harm. (Doc. 1, p. 15). West asked Bent if he could see mental health because he felt suicidal. (*Id.* at p. 14). Bent responded, "in Menard we have to see blood or you dying to go on watch." That evening, West found a small staple and cut himself with it. Bent again refused to send him to mental health and told West that he "couldn't see the blood" and walked away. West then asked the 11 p.m.-7 a.m. shift prison guard to see mental health. The guard told West that there was not any mental health staff on the night shift, and West would have to wait until morning. (*Id.*).

The following morning, West could not get the prison guard on duty to retrieve help for him. (Doc. 1, p.14). The guard would not give West his name and stated he was busy and would not stop for West. Eventually, West had a wellness check from the mental health department due to a call being placed by his family to Menard. West explained his situation to the mental health staff member and "told them I cut up." The mental health staff member told West not to harm himself because "they" would let him die down here. Prior to the wellness check, a mattress had been placed outside West's cell door. During the wellness check, the mental health staff member told him she saw that mattress and "so that was a start." However, after the visit, later that night, a prison guard took the mattress away, and West was not given one. (*Id.*).

The following morning, after being sleep deprived and in an attempt to get medical attention, West cut himself again. Defendant Marberry, a mental health professional, was doing a follow-up visit with an inmate in the neighboring cell. (Doc. 1, p. 4, 14). West asked the prison guard escorting her if he could show Marberry his fresh cut. Marberry then came to his cell, and West asked her to be placed on crisis watch and for medical attention. Marberry looked at the cut and became angry. She stated, "I don't have time for that." She then walked away. (*Id.*).

The next day, West was seen by Internal Affairs for a wellness check because his family had called the facility. (Doc. 1, p.14). West explained that he had not been given a mattress and he inflicted self-harm. West was then granted access to mental health and was placed on crisis watch again.

Each day West would request medical attention for his shoulder injuries and was denied. Staff told him that they were with mental health, not medical. West told mental health staff he was self-harming in order to obtain medical treatment, but he still did not receive a medical appointment. (*Id.*).

At some point, West had a phone call with an attorney who was representing him in a criminal case. (Doc. 1, p. 15). About 20 or 30 minutes prior to the call, he had an appointment with Defendant Nurse Reba Engelage on October 25, 2021. She asked West two questions 1) where was the pain? and 2) could he lift his arm? West told her he had pain in his upper left back, shoulder, collar bone, and chest area, and he could not lift his arm. He also told Engelage that being handcuffed caused almost unbearable pain. Engelage informed West he would been seen the next day, "so let your attorney know you'll be seen tomorrow." He was not seen the next day. (*Id.*).

On October 27, 2021, some attorneys came through West's housing unit while he was on crisis watch. (Doc. 1, p. 16). He spoke with one attorney name Amanda Antholt and told her what he had to go through to be placed on crisis watch. He asked her if she could help him get some medical attention. That day he also saw Defendant Assistant Warden Reickart. West told Reickart about his need for medical attention for his shoulder and that he was having problems receiving his already prescribed high blood pressure, nerve damage, and lower back pain medications. (*Id.* at p. 17). Reickart sent a message through his cell phone, and two prison guards brought him a small manila envelope with information on West. (*Id.* at p. 16, 17). After reading through West's file, Reickart told him "I'll see what's going on with getting you some medical attention." (*Id.* at

p. 17).

On October 27, 2021, West also filed an emergency grievance regarding the denial of medication and medical treatment. (Doc. 1, p. 18). Warden Wills deemed the grievance and emergency on October 29, 2021. On November 18, 2021, Wills concurred with the response from the grievance officer that West had received medical attention on multiple days. However, this report from the grievance officer was not entirely true. The only medical staff that West had seen at that point was Nurse Engelage on October 25, 2021, and a nurse while he was in the mental health interview room. The nurse gave West ibuprofen and told him to submit a sick call request if he needed to see a doctor. (*Id.*). He had not received treatment for his shoulder injuries.

The following day, Engelage informed West that she knew West had reported to Attorney Antholt that she, Engelage, had not allowed him to receive medical attention. (Doc. 1, p. 16). Engelage stated that since West "wanted to play that game lets see who was going to help [him] now."

On December 4, 2021, West saw mental health staff member, Dr. Carridge. (Doc. 1, p. 16). West told Dr. Carridge about his untreated shoulder injury. (*Id.* at p. 16, 18). Dr. Carridge tried to place a phone call to the health care unit to schedule a medical appointment for West. Dr. Carridge was told by a prison guard that he should mind his business and "stay in his lane." The prison guard told Dr. Carridge that West was transferred to Menard because he had assaulted staff. (*Id.*). Dr. Carridge responded that he could be held liable for knowing that West was in need of medical attention and not reporting it. (*Id.* at p. 16). The two then moved away from the door, preventing West from hearing the rest of the conversation. (*Id.*).

On December 6, 2021, West was called to see a physician assistant, Defendant Dearmond. (Doc. 1, p. 15-16). West told Dearmond about his injuries and ongoing pain, and he requested a double cuff permit. Dearmond issued a three month double cuff permit and prescribed the pain

medication Diclofenac. She also scheduled West for x-rays and gave him pages of physical therapy exercises he could do on his own. Dearmond then told West that his injuries occurred at a bad time because Menard did not have a medical director, and Defendant Wexford Health Services, Inc. ("Wexford") would not "give" Menard a doctor. (*Id.*).

On December 29, 2021, West had x-rays taken, and his pain has only "lessened a little bit since." (Doc. 1, p. 16). West continued to write sick call request slips from December 30, 2021 through January 4, 2022. (*Id.* at p. 19). On January 5, 2022, Engelage told West to stop writing request slips, he would be seen the next day.

West was seen by Nurse Nicole on January 6, 2022. (Doc. 1, p. 19). West did not understand the medical terms she used to describe his pain and inability to move his arm. To him, it sounded as if "they" have no intention of helping him to have corrective surgery so that he could possibly have normal range of movement and relief from pain. Nurse Nicole told him that corrective surgery would hurt worse because his bone would have to be rebroken to allow it to heal correctly. (*Id.*).

West still cannot move his left arm like he used to. (Doc. 1, p. 16). He has pain in his back shoulder, collarbone, and chest, and those areas are tender to the touch. West has restricted body movement and cannot sleep, exercise, or properly wash his body without experiencing excruciating pain. (*Id.* at p. 19). His ongoing symptoms have caused a loss of appetite, and since October 2021, he has lost 30 pounds. (*Id.*). West has not received any information on the status of his health. (*Id.* at p. 16).

**PRELIMINARY DISMISSALS**

West names Dr. Melvin Hinton as a defendant and describes him as the Chief of Mental Health Services for Illinois Department of Corrections. (Doc. 1, p. 4). West alleges that Dr. Hinton is in control of the mental health workers who delayed his treatment. West claims that the workers

under Dr. Hinton's authority told him they would report his "serious medical need to 'the top,'" meaning Dr. Hinton. (*Id.*).

These allegations are not sufficient to state a claim against Dr. Melvin for deliberate indifference. A "government official is only liable for his or her own misconduct." *Taylor v. Ways,* 999 F. 3d 478, 493 (7th Cir. 2021) (internal citations and quotations omitted). Supervisors cannot be liable for the misconduct of their subordinates simply because they are in charge. "There is no such thing as *respondeat superior* liability for government officials under § 1983." *Id.* The supervisor must be somehow personally involved in the constitutional violation. Because West does not assert that Dr. Melvin was involved in any way in the denial of his mental health or medical treatment, other than having "authority" over some of the named Defendants, West has not stated a claim against him. Thus, Dr. Melvin will be dismissed without prejudice.

The Court also dismisses Defendant #14 John/Jane Doe Wexford Services,[1] Defendant #15 Jane/John Doe Mental Health Services, and Defendant # 16 Jane/John Doe Menard Prison Staff. (Doc. 1, p. 8). While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards by merely asserting that groups of staff members violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). West must make plausible allegations against individuals and each individual must be listed in the case caption as a defendant. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must

---

[1] West lists Wexford Health Care Services as Defendant #3. (Doc. 1, p. 2). Thus, the Court assumes West is attempting to list staff of Wexford as Defendant #14.

be enough to raise a right to relief above the speculative level."). *See also Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").When a plaintiff does nothing but state that a group of staff harmed him without providing more, all he has done is establish that there is a "sheer possibility" that someone in that group harmed him. Because the Complaint neither describes the unknown defendants nor their conduct, the John and Jane Does are dismissed without prejudice.

Finally, the Court finds that the following claims are improperly joined in this lawsuit. To the extent West is attempting to hold Nurse Engelage liable for her alleged involvement in a conspiracy with other prison guards, including her brother-in-law, to have West assaulted by another inmate in 2018 and then denied medical care, when he was previously housed at Menard, these claims are dismissed without prejudice. (Doc. 1, p. 20-21). The Court finds that claims for constitutional violations that took place four years ago are not related to the current allegations of denial of medical and mental health care and are improperly joined in this action. Rule 21 of the Federal Rules of Civil Procedure grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). Thus, the Court will exercise its discretion and dismisses these claims without prejudice against Engelage as improperly joined in this lawsuit.

Likewise, the Court finds that any claims regarding West's various other medical issues, other than treatment of his shoulder injury and self-imposed cuts, are not properly joined in this case. West states that he complained to Assistant Warden Reickart about lack of medical treatment for his shoulder injury but also that he was not receiving various medications, including high blood pressure, nerve damage, and lower back pain medications. (Doc. 1, p. 17). He alleges that since being at Menard he has had "so many problems with any type of medical treatment." (*Id.* at p. 15).

The Complaint focuses on West's shoulder injury and lack of medical treatment, which

then led him to self-harm. The claim for denial of medication for treating other ailments and "other problems" with treatment is not asserted against any listed Defendant and does not appear to arise from the same transactions or occurrences and share common questions of fact with the claims regarding treatment for West's shoulder injury and cuts. Therefore, the Court finds that any claims regarding other medical issues are not properly joined in this case and are dismissed without prejudice. *See Owens v. Hinsley,* 635 F. 3d 950 (7th Cir. 2011).

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment claim against Wills, Reickart, Wexford, Engelage, Dearmond, Draper, Bordo, Bentner, Chitty, and Bent for denying West adequate medical treatment for the injury to his left shoulder area and associated pain.

**Count 2:** First Amendment claim against Engelage for refusing to provide West medical treatment in retaliation for complaining about his care.

**Count 3:** Eighth Amendment claim against Marberry, Draper, Bordo, Chitty, and Rachel for denying West medical treatment after he inflicted self-harm.

**Count 4:** Eighth Amendment claim against Marberry and Bent for deliberate indifference to West's mental health needs.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

## Count 1

To state an Eighth Amendment claim based on the denial of medical care, a plaintiff must

---

[2] *See Twombly*, 550 U.S. at 570.

plead facts sufficient to show that (1) his medical condition was sufficiently serious, and (2) the defendants acted with deliberate indifference to his medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017); *see also Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996).

The Court finds that West has sufficiently pled that he suffers from a serious medical need. He claims his untreated shoulder injury has caused limited mobility and on-going pain that has hindered his ability to conduct daily activities.

West claims that he informed mental health professionals Draper, Bordo, and Betner on several occasions that he needed medical attention for his shoulder injury, but they failed to ensure he received any medical appointments or treatment. This is sufficient for Count 1 to proceed against Draper, Bordo, and Betner.

Count 1 will also proceed against Sergeant Chitty and Prison Guard Bent. West alleges he informed both officers that he needed medical care and that it was too painful for him to sleep without a mattress due to his shoulder injury. Chitty and Bent did not assist West in obtaining medical care and denied him a mattress for three days.

Count 1 will proceed against Assistant Warden Reickart, Nurse Engelage, and Physician Assistant Dearmond. West claims they were aware of his "serious medical need for surgery and adequate pain medication" but denied him care and then persisted in an ineffective course of treatment. (Doc. 1, p. 20).

West has also sufficiently stated a claim against Wexford for not staffing Menard with a medical doctor, resulting in the denial of constitutionally adequate care for many inmates, including himself, at the facility. *See Dean v. Wexford* Health Sources, Inc., 18 F.4th 214, 235 (7th Cir. 2021). Thus, Count 1 will proceed against Wexford.

West, however, has not stated a claim against Warden Wills. West alleges that Wills was informed he needed medical care because he wrote an emergency grievance. Wills determined that

the grievance was an emergency, and then concurred with the grievance officer's finding that the issue was moot because West had been provided medical treatment. West claims that the grievance officer did not provide accurate information when responding to the grievance.

These allegations do not sufficiently plead that Wills acted with deliberate indifference, as the denial of a grievance, alone, does not establish liability. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the mishandling of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith,* 507 F. 3d 605, 609 (7 Cir. 2007) ("[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"). Other than this one grievance, in which Wills was informed that West had been seen by a medical professional, there are no factual allegations to support that Wills was aware West not being provided medical treatment and then failed to act. Therefore, Count 1 is dismissed without prejudice as to Wills.

## Count 2

West claims that Nurse Engelage failed to place him on the doctor's appointment list. After complaining about his medical care to Attorney Antholt, Engelage told him that if he "wanted to play that game lets see who was going to help [him] now." (Doc. 1, p. 15). This is sufficient for Count 2 to proceed against Engelage. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

## Count 3

Count 3 will proceed against Marberry, Draper, Bordo, Chitty, and Rachel for denying West medical treatment for injuries caused by cutting himself. West claims that he informed these Defendants that he was in need of medical care for his cuts, and they denied to contact a medical provider or ensure he received treatment.

**Count 4**

To state an Eighth Amendment claim, a prisoner must allege that he suffered from an "objectively, sufficiently serious harm" and that the defendants acted with "deliberate indifference to his health or safety." *Kupsky v. McLaren,* 748 F. App'x 74 (7th Cir. 2019). The risk of suicide presents an obviously serious harm. *Kupsky*, 748 F. App'x at 76 (citing *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012)). Deliberate indifference occurs when a prison official is aware that a prisoner "may imminently seek to take his own life and ... fail[s] to take reasonable steps to prevent the inmate from performing this act." Id. at 76 (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001) (internal quotation marks omitted)).

West alleges that he informed Bent that he was feeling suicidal and asked to speak to a mental health professional. Bent denied his request. Later that night, West cut himself with a paper clip, and Bent continued to refuse to inform mental health or act to ensure West's safety. After cutting himself again the following morning, West informed Marberry of his injuries and asked to be placed on crisis watch. She told him she did not have time and walked away. Count 4 will proceed against Marberry and Bent for deliberate indifference to West's mental health needs and risk of self-harm.

**MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Along with the Complaint, West filed a motion for a preliminary injunction and temporary restraining order ("TRO"). (Doc. 7). West states that his continued requests to be seen by a medical professional for his shoulder injury continue to be ignored. The pain medicine he has been prescribed has been ineffective, and despite physical therapy, he still suffers from extreme pain and limited mobility. West claims his ability to do daily tasks is severely hindered. He asks the Court to enter a preliminary injunction directing Defendants to provide him adequate pain medication and facilitate corrective surgery for his shoulder. He also asks the Court to issue a TRO

specifically as to Defendants Engelage, Chitty, Bent, and Marberry, and two other individuals, Justine Engelage and Wes Engelage, who are not parties to this case. West claims that Defendant Reba Engelage, Justine Engelage, and Wes Engelage conspired against him in 2018, when he was previously housed at Menard, and as a result, he was assaulted by another inmate and did not receive medical treatment for his broken thumb.

There are significant differences between a temporary restraining order ("TRO") and a preliminary injunction. A TRO can be issued without notice to the party to be enjoined, but it may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). Further, a TRO may be issued without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan,* 511 U.S. 825, 845 (1994).

Without expressing any opinion on the merits of any of West's other claims for relief, the Court concludes that a TRO should not be issued in this matter. The Prison Litigation Reform Act requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). It is not exactly clear what type of relief West is seeking by requesting a TRO against Defendant Reba Engelage, Justine Engelage, Wes Engelage, Bent,

Chitty, and Marberry, and so, the Court cannot possibly meet the requirements of the PLRA by issuing a TRO that "extends no further than necessary to correct" the alleged violation.

Additionally, West's allegations against these individuals do not demonstrate there is a substantial risk of serious irreparable injury *before* Defendants can be heard. As for Defendant Reba Engelage, according to the motion, West's last interaction with her was on January 5, 2022. Although West claims he is still not receiving medical treatment, it is not alleged the denial of care is currently being caused by Engelage's conduct. Likewise, it is not clear if Defendants Chitty and Bent have any involvement in West's medical care or lack thereof, outside of the specific incidences alleged in the Complaint. As for Defendant Marberry, West claims she has made it her "business not to allow [him] to go to any [mental health] groups." (Doc. 7, p. 5). The Court does not find that the denial of attendance at mental health groups rises to the level of serious injury that warrants a TRO.

And finally, Justine Engelage and Wes Engelage are not defendants in this case, and the Court does not have jurisdiction to enjoin their conduct. For these reasons, the request for a TRO is **DENIED.**

West's request for a preliminary injunction will remain pending until Defendants have been served. Defendants are directed respond to the request for a preliminary injunction within **14 days** of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the motion requesting a preliminary injunction.

### INJUNCTIVE RELIEF AND OFFICIAL CAPACITY CLAIMS

West states that he is suing Defendants in their official and individual capacities. (Doc. 1, p. 23). He seeks injunctive relief in the form of an MRI and corrective surgery, as well as monetary damages. West, however, cannot sue Defendants in their official capacities for money damages. *See Brown v. Budz,* 398 F.3d 9044, 918 (7th Cir. 2005) (Eleventh Amendment bars official

capacity claims for monetary damages). Thus, the official capacity claims against the remaining Defendants are dismissed.

As for West's claim for permanent and preliminary injunctive relief, Defendant Warden Wills will remain a defendant in his official capacity only for the purpose of implementing any injunctive relief that may be ordered. *See generally Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

## MOTION FOR RECRUITMENT OF COUNSEL

West has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 2). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

West states that, in an attempt to recruit counsel on his own, he has written a single law firm, Mogna Firm, LLC, but has not heard a reply. This is not sufficient information for the Court to determine if he has made a reasonable effort to obtain counsel on his own, and so, West has failed to meet his threshold burden of making a "reasonable attempt" to secure counsel. *See Santiago v. Walls,* 599 F.3d 749, 760 (7th Cir. 2010). Should West choose to move for recruitment of counsel at a later date, the Court directs him to include in the motion the names and address of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. Defendants Melvin Hinton, John/Jane Doe 1, John/Jane Doe 2, and John/Jane Doe

3 are **DISMISSED without prejudice.** The Clerk of Court is **DIRECTED** to **TERMINATE** them as parties.

**COUNT 1** will proceed against Reickart, Wexford Health Services, Inc., Engelage, Dearmond, Draper, Bordo, Bentner, Chitty, and Bent, but is **DISMISSED** as to Wills. **COUNT 2** will proceed against Engelage. **COUNT 3** will proceed against Marberry, Draper, Bordo, Chitty, and Rachel. **COUNT 4** will proceed against Marberry and Bent. Warden Wills will remain a defendant in his official capacity only for the purpose of implementing any injunctive relief that may be ordered.

The Court **DENIES** the request for a temporary restraining order and **DEFERS** ruling on the request for a preliminary injunction. (Doc. 7). **Defendants are ORDERED to respond to the request for a preliminary injunction within 14 days of service of the pleadings in this case.**

The Motion for Recruitment of Counsel (Doc. 2) is **DENIED.**

Because these claims pertain to medical issues, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Wills (official capacity only), Reickart, Wexford Health Services, Inc., Engelage, Dearmond, Marberry, Draper, Bordo, Bentner, Chitty, Rachel, and Bent the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7), and this Memorandum and Order to Defendants' place of employment as identified by West. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the

defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by West, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g)**. Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

Finally, West is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 9, 2022**

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.