IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENTES WEST, #K82893, | |
| Plaintiff, | Case No. 22-cv-00242-SPM |
| v. | |
| ANTHONY WILLS, *et al.*, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on motions for summary judgment on the issue of exhaustion filed by Defendants Kevin Reichert, Dustin Chitty, Quinnton Bent, Rachel McKinstry, Reva Engelage, Anthony Wills, Alisa Dearmond, Rhiana Draper, Kara Bordeaux, and Virginia Mabrey. (Doc. 66, 73). Plaintiff filed responses in opposition to both motions. (Doc. 74, 75). For the following reasons, the motions will be denied at this time.

### BACKGROUND

Plaintiff Kentes West, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), initiated this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. In the Complaint, Plaintiff alleges that he was assaulted by prison guards at Stateville Correctional Center ("Stateville") on October 14, 2021, resulting in injuries to his left shoulder. He was denied medical treatment at Stateville and immediately transferred to Menard, where he continues to be denied adequate medical care for his shoulder injury because staff believes he sustained his injuries while assaulting a prison staff member. Following review of the Complaint pursuant to 28 U.S.C. §1915A, Plaintiff is proceeding with the following claims:

> **Count 1:** Eighth Amendment claim against Reichert, Wexford, Engelage, Dearmond, Draper, Bordeaux, Buettner, Chitty, and Bent for denying Plaintiff adequate medical treatment for the injury to his left shoulder area and associated pain.
>
> **Count 2:** First Amendment claim against Engelage for refusing to provide Plaintiff medical treatment in retaliation for complaining about his care.
>
> **Count 3:** Eighth Amendment claim against Mabrey, Draper, Bordeaux, Chitty, and McKinstry for denying West medical treatment after he inflicted self-harm.
>
> **Count 4:** Eighth Amendment claim against Mabrey and Bent for deliberate indifference to West's mental health needs.

(Doc. 14).

On December 9, 2022, Defendants Reichert, Chitty, Bent, McKinstry, Engelage, and Wills (IDOC Defendants) filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies prior to initiating this lawsuit against them and all his claims against them should be dismissed. (Doc. 66, 67). On December 12, 2022, Defendants Dearmond, Draper, Bordeaux, and Mabrey (Wexford Defendants) also filed a motion for summary judgment. (Doc. 69, 73).[1] In the motion, Wexford Defendants argue that Plaintiff failed to exhaust his administrative remedies as to Dearmond in Count 1, Mabrey, Draper, and Bordeaux in Count 3, and Mabrey in Count 4.

All Defendants point to a single grievance filed by Plaintiff that is relevant to his claims in this case. In Emergency Grievance #345-10-21, dated October 27, 2021, Plaintiff writes:

> I've been in Menard since 10-4-21. I have requested multiple times for medical attention due to an injury to my left shoulder. I am in pain; there is swelling and inflammation; and also I have limited range of motion due to this injury. I am being denied all pain meds and x-rays.

(Doc. 67-2, p. 9). He requests a sick call appointment, x-rays, and pain management medications.

---

[1] Defendants Wexford Health Sources, Inc. and Sheri Buettner did not file motions for summary judgment on the issue of exhaustion by the deadline of November 7, 2022, so the defense is **DEEMED WAIVED** by these Defendants.

Page 2 of 9

(*Id.*). This grievance was deemed an emergency by Warden Wills on October 29, 2021. (*Id.*). The grievance officer recommended that the grievance be moot, as Plaintiff had been regularly seen by nurses and was awaiting his appointment with a doctor or nurse practitioner for his shoulder. (*Id.* at p. 7). Warden Wills concurred and Plaintiff appealed. The Administrative Review Board reviewed the grievance on December 6, 2021. (*Id.* at p. 6).

In the response in opposition to the motions for summary judgment, Plaintiff argues that he did attempt to exhaust his administrative remedies, but the administrative process was not available to him. (Doc. 74, 75). He states that while on crisis watch he was not allowed to have pens or papers, including grievance forms. Plaintiff explains that Emergency Grievance #345-10-21 was written by another inmate housed a few cells down from him. (Doc. 74, p. 3). He further asserts that he later requested grievances, but for a week he was told by correctional officers that there were no grievances in the building. (*Id.* at p. 4). Finally, Plaintiff states that he eventually was provided forms and filed multiple grievances by placing them in the segregation grievance box. These filed grievances went missing, and he did not receive responses. Plaintiff argues that he attempted to follow proper procedures, but staff members were responsible for mishandling his grievances. Accordingly, the process was not available to him, and he asserts that the motions for summary judgment should be denied.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck &*

*Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Roberts v. Neal,* 745 F. 3d 232, 236 (7th Cir. 2014). Where there is no disputed issue of fact, a hearing is not necessary.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

As an inmate confined in the Illinois Department of Corrections, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to properly exhaust his administrative remedies. 20 Ill. Admin. Code § 504.800, *et seq*. According to the grievance process, an inmate must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 Ill. Admin. Code § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a grievance officer who must render a written

recommendation to the chief administrative officer — usually the warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id.* §504.830(e). The chief administrative officer then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the chief administrative officer in writing within 30 days to the Administrative Review Board ("ARB") for a final decision. 20 ILL. ADMIN. CODE §504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE §504.850(d) and (e). The inmate is then sent a copy of director's decision. *Id.* §5043850(e).

An inmate can request that a grievance be handled as an emergency by forwarding it directly to the chief administrative officer. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.*

## ANALYSIS

The Court will first address whether Emergency Grievance #345-10-21 serves to exhaust any of Plaintiff's claims. It is not disputed that Plaintiff followed proper procedures when submitting and appealing the emergency grievance. The issue is whether the grievance contains sufficient information to exhaust the claims in this lawsuit. The Illinois Administrative Code requires a certain amount of detail when utilizing the administrative process. The grievance must "contain factual details regarding each aspect of the [inmate's] complaint, including…the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the inmate does not know the name of the individual involved in the incident, then he or she must use as much descriptive information about the individual as possible.

*Id.* The Seventh Circuit has emphasized that the purpose of the exhaustion requirement is "to alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005). Thus, the content of the grievance must include enough information to provide "prison officials a fair opportunity to address" the inmate's complaint. *Maddox v. Love,* 655 F. 3d 709, 722 (7th Cir. 2013).

The Court agrees with Defendants that Emergency Grievance #345-10-21 does not exhaust the claims against them.[2] The grievance clearly cannot serve to exhaust Counts 2, 3, and 4, as it makes no mention of Plaintiff's mental health concerns and lack of medical treatment for injuries sustained from inflicting self-harm or mistreatment or retaliation by Engelage.

Furthermore, although Plaintiff complains of not receiving medical attention for his shoulder in Emergency Grievance #345-10-21, the grievance also cannot serve to exhaust the allegations of Count 1. In Emergency Grievance #345-10-21, dated October 27, 2021, Plaintiff complains of not receiving medical attention for an injury to his shoulder since arriving at Menard on October 14, 2021, despite his requests. He asks for a sick call appointment, x-rays, and pain medicine. The grievance does not alert prison officials that he was actively and deliberately being denied medical treatment by staff, including Correctional Officers Chitty and Bent and Assistant Warden Reichert, or that he needed and was denied a mattress for his injury. Nor does the grievance communicate that he was unhappy with the care he received by Nurse Engelage on October 25, 2021. Rather, the grievance simply communicates that Plaintiff is wanting to be scheduled for a medical appointment. This interpretation is supported by the grievance response, which communicates to Plaintiff that he has been referred to be scheduled with a medical doctor

---

[2] Plaintiff does not directly address Defendants' arguments that Emergency Grievance #345-10-21 failed to include the details required to exhaust his claims under the Illinois Administrative Code and was filed prior to his interactions with Dearmond, Mabrey, Draper, and Bordeaux.

or nurse practitioner, and Plaintiff's own statement that as of October 28, 2021, he "never told anyone that a specific person wasn't allowing [him] medical attention." (Doc. 67-2, p. 7; Doc. 1, p. 15).

Plaintiff did not see Nurse Practitioner Dearmond until December 6, 2021, after the grievance was filed. At the appointment Dearmond prescribed pain medication, issued a double cuff permit, and ordered x-rays. Thus, there was no way for prison officials to know from Emergency Grievance #345-10-21 that intentional staff misconduct was occurring or that Plaintiff believed he was not receiving adequate medical care. *See King v. Dart,* 63 F. 4th 602, 608 (7th Cir. 2023) (holding that grievance complaining in a grievance of injuries by medical staff was not sufficient to alert the jail that correctional officers were involved in the plaintiff being injured). *See also Hall v. Wexford Health Sources, Inc.,* No. 20-cv-0556-SPM, 2022 WL 742859, at *5 (S.D. Ill. Mar. 11, 2022) (simply grieving that "sick call slips had gone unanswered [is a] drastically different complaint than the allegation that certain staff members were intentionally and actively refusing to schedule him to see a medical provider, after submitting the sick call slips"). Accordingly, the grievance did not sufficiently alert prison officials to the issues alleged in this case and did not exhaust Plaintiff's claims.

Although Emergency Grievance #345-10-21 did not serve to exhaust any of Plaintiff's claims in this case, the motions for summary judgment will be denied. Plaintiff is only required to exhaust the administrative remedies that were available to him, and he "need not exhaust unavailable ones." *See Ross v. Blake,* 578 U.S. 632, 642 (2016). "Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies." *Ebmeyer v. Brock,* 11 F. 4th 537, 542 (7th Cir. 2021) (citations omitted). Because Defendants invoke the affirmative defense of failure to exhaust, they must prove that "an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas*

*v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). *See also Gooch v. Young,* 24 4th 624, 627 (7th Cir. 2022) (defendants "cannot shift it to require [the plaintiff] that administrative remedies were unavailable").

Plaintiff disputes that the administrative process at Menard was available to him. For a period of time, he asserts that he was denied grievance forms by correctional officers. When he requested forms from his counselor, Counselor Hood, she did not assist him in accessing the forms but merely pointed him back to cellhouse staff. (Doc. 75, p. 3, 11). In his cumulative counseling summary, Counselor Hood records on November 23, 2021, "Grievances are in the cellhouse, counselors are not supplied with them." (*Id.* at p. 11). If Plaintiff's assertions are true, a refusal by staff to provide the necessary grievance forms "suffices to show" that his administrative remedies were unavailable. *Gooch,* 24 F. 4th at 628 (citing *Hill v. Snyder,* 817 F. 3d 1037, 1041 (7th Cir. 2016); *Dale v. Lappin,* 376 F. 3d 652, 656 (7th Cir. 2005)).

Plaintiff also claims that when he eventually did receive forms and submitted grievances, the grievances went unanswered. He contacted his counselor, who again failed to help him. Plaintiff has submitted as evidence a note that Counselor Hood wrote in response to his inquiry about his missing grievances. In the note, Hood writes, "I do not see or touch grievances until they are given to me by the Grievance Office, so I don't know anything about your missing grievances." (*Id.* at p. 3, 12, 13). In the cumulative counseling summary, Hood recorded on February 10, 2022, "No grievances since the shoulder grievance has[sic] been recorded." (*Id.* at p. 12). Based on this evidence, the Court cannot say as a matter of law that Defendants have met their burden of demonstrating that Plaintiff had available remedies that he did not utilize. A hearing is required to resolve this disputed issue of fact. *See Pavey*, 544 F. 3d 739.

If Defendants would like to pursue this affirmative defense for failure to exhaust administrative remedies any further at this point, they must request a *Pavey* hearing within fourteen

days. If a hearing is requested, the issues the Court would consider are limited to whether Plaintiff was denied access to forms and whether he properly submitted grievances that went unanswered. The parties will be expected to present evidence only on these issues, if a *Pavey* hearing is held. If Defendants do not request a *Pavey* hearing, the Court will enter a new scheduling and discovery order lifting the stay on merits discovery, or the parties may request that the case be referred for a settlement conference or mediation.

## DISPOSITION

For the reasons stated above, the motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants are **DENIED.** (Doc. 66, 73). Defendants must file a notice within fourteen (14) days of this Order either withdrawing the affirmative defense of exhaustion or requesting a *Pavey* hearing. **Failure to file a notice by this deadline and in compliance with this Order will result in a waiver of this affirmative defense.**

IT IS SO ORDERED.

DATED:   September 15, 2023

                                              *s/Stephen P. McGlynn*
                                              **STEPHEN P. MCGLYNN**
                                              **United States District Judge**